## Miller v. Commonwealth.

(Decided February 13, 1923.)

## Appeal from Breckinridge Circuit Court.

1. Criminal Law—New Trial.—Under the Constitution and laws of this state every person accused of crime, however great his guilt, heinous the crime or revolting the circumstances attending its commission, is entitled to a fair and impartial trial, which includes, of course, reasonable time and opportunity to prepare and present his defense. And whenever it has been made apparent to the Court of Appeals that one accused of crime was deprived by the trial court of reasonable opportunity to explain away his guilt, or was forced into trial without reasonable opportunity for preparation, it has not hesitated to adjudge him a new trial. While in the interest of justice a speedy trial is much to be desired, it is equally important that the law be administered and its judgments executed in an orderly and deliberate way, to the end that every person charged with and arraigned for crime may have, in truth, a fair trial.

2. Criminal Law—Continuance.—The object of a continuance is to afford the accused reasonable opportunity to employ and advise with counsel needed in his defense, or, if unable to employ counsel, to advise with and obtain the assistance of counsel provided by the

court; to procure the attendance of witnesses and their evidence to establish his innocence, excuse his commission of the offense charged, or discredit the witnesses for the prosecution; and, also, reasonable opportunity to obtain, if desired, the presence and assistance at his trial or in making necessary preparation for same, of a member, or members of his family. And if upon the calling of the case for trial, by a proper showing on the part of the accused, it is made to appear to the trial court that these aims, or any of them, cannot reasonably be accomplished without a continuance of the case, the refusal of the continuance by it will amount to an abuse of its discretion and constitute reversible error.

3. Criminal Law—Continuance.—As on the appellant's motion for a continuance in this case it was made to appear from the trial court's own records, that he was put on trial under an indictment for murder six days after the death of the victim of the homicide and return of the indictment, three days after the appointment by the court of an attorney to defend him and the setting of the case down for trial; and, in addition, shown by the affidavits of the appellant and his attorney that the appellant was without money, a stranger in the community, and from the time of his arrest. eight days previously, had been confined in jail laboring under the disability of a wound produced by the passage of a pistol bullet entirely through his body; that for want of time and opportunity he had been unable to properly advise with his attorney, or the latter to make the preparation necessary for his trial or to hear from his (appellant's) father in Alabama, to whom the attorney had written and whose assistance was needed at his trial. Held, that the facts thus shown, together with the further information furnished by the affidavit of the attorney, that from some cause unknown to him, the appellant's condition of mind prevented him from giving him (the attorney) any assistance in the preparation of his defense for the contemplated trial, clearly entitled the appellant to the continuance asked; consequently, the action of the trial court in overruling his motion therefor must be declared reversible error.

CLAUDE MERCER for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Following his indictment by the grand jury of Breckinridge county for the murder of Sam Haycraft, the appellant, Charles Miller, a negro, was tried in the circuit court of that county for the crime, by verdict of a jury found guilty and his punishment fixed at death. The appellant filed a motion and grounds for a new trial, but

the motion was overruled by the court, sentence pronounced and judgment entered in conformity with the verdict. Duly excepting to each of these acts and rulings of the trial court, he prayed and was granted an appeal from the judgment, his prosecution of which requires of this court a review of the judgment and the rulings assigned as reversible error.

There were but two grounds urged by the appellant for a new trial, and these grounds are alone relied on for the reversal of the judgment. They are that the trial court erred to the prejudice of the appellant's substantial rights, first, in overruling his motion for a continuance; second, in admitting, on the trial, incompetent evidence against him.

It appears from the evidence introduced on the trial that the deceased, Sam Haycraft, at the time of his death and prior thereto was in the employ of the Louisville, Henderson & St. Louis Railroad Company as a watchman on what was known as its Sugar Tree Run bridge, which spans a creek of that name twelve miles south of Irvington in Breckinridge county, crossed by its railroad track. Haycraft was shot between eleven and twelve o'clock the night of October 4, 1922, and was found lying at the west end of the Sugar Tree Run bridge about seven o'clock on the morning of October 5th, desperately wounded, several pistol balls having penetrated his body. He was immediately taken to Louisville and placed in a hospital for surgical treatment, and there died of his wounds October 7th. On the 5th of October the appellant was arrested near Irvington by an officer and posse. In effecting the arrest, which seems to have been resisted by the appellant, he was shot and wounded by a member of the posse, the bullet passing entirely through his body. He was at once incarcerated in the county jail at Hardinsburg, in which town the Breckinridge circuit court and grand jury were then in session, the court having previously convened and the grand jury been empaneled and sworn, on Monday, October 2, 1922, that being the first day of the regular term of the court required by statute to be held in the month of October of that year. On Saturday, October the 7th, which was the sixth day of the October term of the court, and, also, the day upon which Haycraft died of his wounds, the indictment charging the appellant with the murder of the deceased, was returned by the grand jury, and by an order of the court entered on the same day the case was passed,

without assignment for trial, until Monday, October 9th, and seventh day of the term, on which day by a further order it was set for trial Thursday, October 12, the tenth day of the term, and Claude Mercer, an attorney of the Hardinsburg bar, appointed to defend the appellant on his trial under the indictment, which appointment was accepted and service undertaken by the appointee. It, therefore, clearly appears from the record that the appellant was unrepresented by counsel until an attorney was appointed by the court to conduct his defense; and that this appointment was made two days after the appellant's indictment and three days before the beginning of his trial, which allowed the attorney and client less than three full days' time in which to prepare for the latter's defense on the trial. It also appears that the appellant arrived in Breckinridge county about the time Haycraft was killed, and that he was a stranger wholly without acquaintanceship in that county.

When, on October 12th and tenth day of the term, the case was called for trial, and the attorney for the Commonwealth had announced its readiness for trial, the appellant by counsel declared his unreadiness and entered motion, supported by his affidavit and that of counsel, for a continuance of the case until the next regular term of the court. The affidavit filed by appellant set forth the absence of one Aubrey Mopley, stating that he was a resident of Jefferson county, a material witness for the appellant and would, if present on his trial, testify that the latter boarded with him before going to Breckinridge county, and that on the night of October 4, 1922, when Haycraft was shot, appellant was with him as late as 10 o'clock p. m., which, if true, would have made it impossible for him to have been at the Sugar Tree Run bridge at the time of the shooting of Haycraft. That a subpoena was issued for Mopley October 9th and on that day mailed to the sheriff of Jefferson county, which by mail was returned with the following endorsement thereon signed by the sheriff: "Oct. 11, 1922, not sufficient time to find the witness Aubrey Mopley." The affidavit contained the usual statements as to the truth of the testimony that would be given by the witness and that his absence was without appellant's procurement or consent. Its more material statements, however, were that he was shot and wounded October 5th, by a ball from a gun or pistol that penetrated his back and came out in the front of his body, the shock of which was so great "as to cause him not to

be in fit mental or physical condition to properly advise his attorney preparatory to his defense;'' and, further, that he (appellant) ''is a stranger in this community and has no money nor friends, and has procured a letter to be written to his father, who resides near Madison, Alabama, advising him of his trouble and requesting his presence here, but that his father has not come as yet.'' The affidavit concludes with an affirmation of the appellant's belief that for the reasons stated he could not obtain a fair trial at the October term of the court then being held.

The affidavit of Claude Mercer, the appellant's attorney, after reciting his appointment by the court to defend the appellant, states that on the day of such appointment he in person went to see the defendant in the jail and found him in bed apparently suffering from a gun or pistol shot wound, the bullet having penetrated his body, entering at the back and coming out on the opposite side. That he attempted to talk with appellant about his case and found him, either from natural or unnatural causes, one of which was true, but which he (affiant) did not know, so reluctant to talk that he would only answer questions asked him by the affiant; and that thereafter on three or four other visits made appellant by affiant at the jail, he found his condition practically the same. That on the first of such visits, he was asked by appellant to write his father for him, which he at once did and at 9 a. m. the same day mailed the letter to the father's address in Alabama. Other material statements contained in the attorney's affidavit will more fully appear in the following excerpts quoted therefrom:

''Affiant states that said defendant has at no time been in a proper condition, either mentally or physically, or for some reason unknown to the affiant, to advise him properly of his defense. . . . That he (affiant) has not had sufficient time or opportunity to investigate the circumstances of the homicide charged to the defendant, in order to properly prepare a defense; that the defendant has given affiant the name of one Aubrey Mopley, as the only witness he has, and that he procured for Mopley the issual of the subpoena set forth in the affidavit of the defendant. Affiant states that considering the gravity of the charge and the condition of the defendant, and the fact that the murder occurred on October 4th, 1922, in this county, which was two days after the present term of the court convened in regular session; and that de-

fendant was shot and severely wounded; and that the indictment was returned at the present term of court, that such time has not elapsed in affiant's opinion as to enable him to properly prepare a defense. . . . That in his opinion the case should be continued until the next term of this court to afford the defendant and his attorney sufficient opportunity to thoroughly investigate the circumstances attending the killing, in order that he may have a fair trial.''

Several affidavits were filed for the Commonwealth in resistance of the appellant's motion for a continuance of the case. One obtained of the jailer, a joint one from four prisoners confined in the jail with the appellant, and one from the physician by whom his wound was treated. The affidavits of the jailer and four prisoners were substantially to the effect that they saw nothing in the conduct of the appellant that indicated an abnormal condition of mind, and that he appeared to be competent to advise with his attorney and seemed to do so without difficulty, when the latter visited and talked with him. They failed, however, to relate any conversation between the appellant and his attorney in their presence, or hearing, from which the trial court could have formed an opinion as to the appellant's physical or mental fitness to give to or receive from the attorney assistance in the preparation of his defense for the contemplated trial of the case. As these affiants were not experts and their acquaintance with the appellant was of only a week's duration, their affidavits threw little light upon the matter under investigation.

The affidavit of the physician, after describing the character of the appellant's wound, which he said was produced by a pistol bullet that entered the back two and one-half inches to the left of the spinal column, passed entirely through the body and made its exit in front between the 8th and 9th ribs two inches below the left nipple, substantially stated that, in the opinion of affiant, excepting the pain and soreness resulting from the wound, the appellant's physical and mental condition, at such times as he attended him, was normal and such as did not impair his mental fitness to advise with and assist his attorney in the latter's preparation of his defense for the approaching trial of the case as ordered by the court. It does not, however, appear from the affidavit of the physician that he was present at any of the several interviews that occurred between the appellant and his

attorney, or that he was aware of anything that was said in the conversations then had, or of the accompanying efforts of the attorney to obtain of the appellant such information as he regarded necessary to enable him to prepare for his trial. Furthermore, it is not stated in the affidavit, nor otherwise shown, that the physician made any examination of the appellant for the purpose of ascertaining his mental status. Whether by making such an examination he would, or not, have discovered what seemed patent to the appellant's attorney, viz., that the appellant was possessed of some defect or peculiarity of mind that mentally disqualified him to render the attorney material assistance in the preparation for trial, must be left wholly to conjecture.

As before remarked, it is disclosed by the affidavit of the attorney filed in support of the appellant's motion for the continuance, that on the day of his appointment by the court as attorney for the latter, which, as shown by the order of appointment, was on the 9th day of October, seventh day of the term, and three days before the day set for the appellant's trial, viz., October 12th, and tenth day of the term, he (the attorney) succeeded in obtaining from him the name and address of his father, Richard Miller, a resident of the town of Madison, state of Alabama, to whom he wrote and mailed on a morning train the same day, a letter advising him of his son's plight and asking of him in behalf of the latter, such assistance as might be of service in enabling his attorney to make for him a proper defense. To this letter no reply was received before or during the trial of the appellant, which began and was completed October 12th, the tenth day of the term, to which it had previously been assigned by order of the court. On the next day, October 13th, early in the morning, the appellant's motion and grounds for a new trial were filed, the motion overruled, sentence pronounced and judgment entered pursuant to the verdict of the jury, and immediately thereafter, not later than nine o'clock a. m., October 13th, the term closed with the final adjournment of the court.

We are informed by the brief of appellant's attorney filed on the appeal that he received the afternoon of October 13th, and after the final adjournment of the circuit court on that day, a letter from Richard Miller, the appellant's father, in reply to the one he had previously written him, by which he was informed that the appellant had been adjudged a lunatic and confined in an asylum

for the insane at Mt. Vernon, Alabama, from which he later escaped, since which occurrence his whereabouts had been unknown to his family and the asylum authorities. This information was confirmed by two other letters, of date October 16th and 21st, 1922, respectively, one from the assistant superintendent and the other from the assistant physician of the Mt. Vernon, Alabama, asylum, both of which contain the additional information that the appellant's condition of mind was diagnosed at the Mt. Vernon asylum as *"dementia praecox*—paranoiac type."

The several letters referred to were attached to and now appear with the brief of appellant's counsel; but as a case on appeal to this court must be reviewed and decided upon the record as made and presented in the court from which the appeal is taken, and these letters were not used by the appellant on the hearing in the court below of his motion for a continuance, or there made parts of the record, we cannot now consider them in determining whether that court erred in refusing the continuance; although it was not the fault of the appellant or his attorney that the letters were not introduced in support of the motion for the continuance, or could not be procured in time for such use.

In determining, therefore, whether the trial court's refusal of the continuance sought by the appellant amounted to an abuse of its discretion, we will look alone to the facts and circumstances presented on the hearing of the motion for the continuance. Briefly repeated these facts and circumstances were, that on October 5, 1922, the day following the shooting of Haycraft, the appellant was arrested therefor and incarcerated in jail. Haycraft died of his wounds October 7th, and on that day, which was the sixth day of the October term of the Breckinridge circuit court, the indictment, charging the appellant with the murder of Haycraft, was returned. Two days later, viz., Monday, October 9th, and seventh day of the term, the court, by an order then entered, appointed the attorney to represent the appellant and fixed October 12th, the tenth day of the term, as the date for the latter's trial. It will thus be seen that the appellant was compelled to go into a trial for murder, a crime as heinous as is known to the law and for which the death penalty is a punishment, seven days after his arrest, five days after the death of his alleged victim and the return of the indictment charging him with the murder of the latter, and

three days after the appointment by the court of an attorney to make for him a defense. It should also be kept in mind that when committed to jail and during the entire time intervening between such committal and his trial, the appellant was laboring under the disability that would naturally result from a serious gunshot wound; for it goes without saying, that a wound caused like that of appellant by the passage of a bullet entirely through his body, is to be classed as a serious, if not a dangerous, wound that would necessarily be attended by physical pain and, probably, mental suffering as well; and that there was "soreness" from the appellant's wound was admitted by the affidavit of the physician filed for the Commonwealth on the hearing of the motion for the continuance.

Manifestly, the foregoing self-evident facts were sufficient in themselves to demonstrate that the time allowed the appellant in which to make the preparation necessary for his trial on the day named in the order of the court, was wholly inadequate to that end, indeed, so limited as to make such preparation, however great the diligence of himself and attorney, impossible. With those facts must be considered the uncontradicted information furnished by the affidavits of the appellant and his attorney, to the effect that the former was a stranger wholly without acquaintanceship in the county; that he was expecting assistance in the preparation for trial from his father, a resident of a distant state, to whom the attorney, when appointed to defend the appellant, immediately wrote for such assistance, but to which letter there had been no reply and, for want of sufficient time, could have been none, nor a visit from the father, before or on the day set for the appellant's trial.

In addition to the information mentioned, the affidavits of the appellant and attorney positively stated their inability to prepare for the appellant's trial within the limited time allowed by the court for such preparation; that of the attorney giving emphasis to his want of familiarity with the facts and circumstances attending the commission of the crime charged, the necessity of his being given time and opportunity to investigate them; and that owing to the appellant's condition of mind, whether such condition resulted from his wound or some other cause the affiant could not state, he was unable to obtain any material assistance from him in the preparation of his defense for the trial.

After a careful consideration of all the facts and circumstances presented on the hearing of the appellant's motion for the continuance, we have reached the conclusion that the trial court's action in overruling the motion must be declared reversible error. Under the Constitution and laws of this state every person accused of crime, however great his guilt, heinous the crime or revolting the circumstances attending its commission, is entitled to a fair and impartial trial, which includes, of course, a fair opportunity to prepare and present his defense. And whenever it has been made apparent to this court that one accused of crime was deprived of reasonable opportunity to explain away his guilt, or was forced into trial without reasonable opportunity for preparation, it has not hesitated to adjudge him a new trial. While in the interest of justice a speedy trial is much to be desired, it is more important that the law be administered and its judgments executed in an orderly and deliberate way, to the end that every person arraigned for crime may have, in truth, a fair trial.

The object of a continuance is to afford the accused reasonable opportunity to employ and advise with counsel needed in his defense or, if unable to employ counsel, to advise with and obtain the assistance of counsel provided by the court; to procure the attendance of witnesses and their evidence to establish his innocence, excuse his commission of the offense charged, or discredit the witnesses for the prosecution; and, also, reasonable opportunity to obtain, if desired, the presence and assistance at his trial or in making necessary preparation for same, of a member or members of his family. And if by a proper showing on the part of the accused, it is made to appear to the trial court that these aims, or any of them, cannot reasonably be accomplished without a continuance of the case, the refusal of the continuance by it will amount to an abuse of its discretion. We repeatedly have condemned such precipitancy of action in forcing a trial as was followed by the court below in the case at bar. One of the cases so holding is that of Smith v. Commonwealth, 133 Ky. 532, in which the appellant was convicted and given the death penalty in the court below for the murder of his father, who in attempting to restrain the son from shooting another was himself shot and killed by him. The circuit court being in session at the time of the homicide, the grand jury immediately returned an indictment charging the appellant with murder. The latter

being without money with which to employ counsel, the court upon the return of the indictment appointed an attorney to defend him and at the same time set the case for trial four days later. The attorney thereupon had subpoenas issued for his witnesses returnable on the day fixed for the trial. When that day arrived the appellant moved for a continuance supported by the affidavits of himself and attorney, each stating as the principal ground for the continuance asked, that the attorney in the brief time intervening between his appointment and the day fixed for the trial, had not been able to fully investigate the facts connected with the homicide for which the appellant was indicted, or to properly prepare his defense. The court, however, refused the continuance. In declaring this ruling reversible error we, in part, said:

"Under the circumstances of this case the court's refusal of the continuance asked by the appellant, was an abuse of discretion. The appellant may be a brutal and dangerous man, but by the showing of the record he is certainly an ignorant one. His penniless and friendless condition, together with his ignorance and the fact that his counsel between the time of his appointment to represent him and the beginning of the trial was almost constantly engaged in discharging his professional duties in other cases pending in the same court, made it well nigh impossible for him to properly prepare appellant's case for trial within the three or four days' time allowed by the court. That appellant's counsel is a capable lawyer all who know him will concede; but while the record manifests the skill and care with which under the circumstances he conducted appellant's defense, it also shows the embarrassments that inevitably result from the hasty and incomplete preparation of a case. He should have had reasonable opportunities for conferring with his client and the members of his family; reasonable time for looking up witnesses and ascertaining their testimony, and for making such further preparation as would secure for his client a fair and impartial trial."

In Samuels v. Commonwealth, 154 Ky. 758, the appellant, a negro, killed another man of his own color December 3rd, was indicted for murder December 4th, an attorney then appointed by the court to defend him, and his case set for trial December 9th, on which day he was tried, convicted and given the death penalty. He was confined in jail from the day of the homicide until the trial; and his counsel by reason of the briefness of the time allowed and

his being much of the time engaged in the trial of other cases, had no opportunity before the trial to properly investigate the facts or prepare his defense. On the appeal the trial court's refusal of the continuance asked by the appellant was held reversible error.

While in the opinion full recognition is given to the importance of speedy trials in the enforcement of the criminal laws, emphasis is given to the fact that it is more important that such trials be fair than that they be speedy. But the following excerpt from the opinion is here quoted because of its peculiar applicability to the situation presented in the instant case:

"It is true, as argued for the Commonwealth, that many applications for a continuance are made purely for the purpose of delay and with a view of defeating the ends of justice, but applications like this are generally made by defendants who have the aid of friends and money, and who hope by one of these methods to secure some undue advantage that could not otherwise be obtained. But when, as in this case, the defendant is a poor, ignorant and friendless negro, it is not to be suspected that the application for a postponement, under the circumstance stated, was made with the hope that it would result in any improper advantages or do more than enable him to present in his defense such facts and circumstances as might be procured through the assistance of his counsel from witnesses obtained by the ordinary processes of the law, which would have been placed at his disposal."

We also may say of this case much of what is thus expressed in Allen v. Commonwealth, 168 Ky. 325:

"But when a man stands charged with a capital offense, and may, in the discretion of the jury, be deprived of his life or his liberty forever, it is of the highest importance that he should have such time and opportunity to make his defense as the grave nature of the accusation and its consequences demand, and under the unusual conditions shown by the record we do not think that the appellant was given this time and opportunity. It is true he had employed counsel to defend him, and it does not appear that any witness whose evidence he desired was absent from the trial. But the mere presence of witnesses and the services of counsel are only a part of the preparation needed in important cases. The accused may in some cases have every witness that he needed in the court

house and be represented by able counsel and yet not have the time for preparation that he should be allowed in order to properly present his defense.''

Obviously, the appellant's need of a continuance was not obviated by the court's permitting his affidavit statement as to what the absent witness Mopley would testify to be read as the latter's deposition. Only by a continuance of the case at bar could the appellant's counsel have been afforded time and opportunity for a thorough investigation of the facts and circumstances attending the commission of the crime for which appellant was indicted, and his connection, if any, with it, and also by proper investigation to verify or remove his (counsel's) belief of the unsoundness of the latter's mind; both of which investigations were and are necessary to enable counsel to prepare his defense.

The appellant's complaint of the admission by the trial court of incompetent evidence remains to be considered. The evidence complained of was furnished by the testimony of one Clifford Poole, respecting a pistol that was found with another pistol and a gold watch in the possession of the appellant at the time of his arrest and which articles were then taken from him by the officer and posse making the arrest. The watch was identified by other witnesses as the property of Haycraft, but the pistol first mentioned was claimed and identified by Poole as his property; he stating that he had loaned it to one Ed Sago, at the time in the employ of the Louisville, Henderson & St. Louis Railroad Company, as a watchman at its Sinking Creek bridge about five miles from the bridge of which Sam Haycraft was the watchman. Sago, it seems, was shot and killed the same night (October 4) Haycraft received the wounds that caused his death. Poole further testified that he saw Sago in possession of the pistol on the day preceding the night he was killed, but that when early the following morning he saw his dead body where it was found at the Sinking Creek bridge, the pistol was absent.

It is insisted for the appellant that this evidence was not only incompetent, but that it had a very prejudicial effect upon his substantial rights, as it tended to connect him with the commission of another crime and was, in fact, largely instrumental in causing his conviction of the one for which he was tried. We think, however, that the testimony of Poole was competent for the purpose of identifying the appellant as the slayer of Haycraft

and as conducing to show an intent or motive on the part of appellant for the killing of the latter, viz., that the motive was robbery. In Bishop's New Criminal Procedure, vol. 1, section 1126, the reasons for upholding the admissibility of such evidence are thus stated:

"The intent, knowledge or motive under which the defendant did the act charged against him, not generally admitting of other than circumstantial evidence, may often be aided in the proofs by showing another crime, actual or attempted. Then it is permissible."

The same doctrine is recognized in Greenleaf on Evidence, vol. 1, section 53, in which it is in part said:

"In the proof of intention, it is not always necessary that the evidence should apply directly to the particular act with the commission of which the party is charged, for the unlawful intent in the particular case may well be inferred from a similar intent proved to have existed in other transactions done before or after that time. . . . "

It will be found that this court has given its sanction to the rule, *supra,* in the following cases and others that might be cited: Obrien v. Commonwealth, 115 Ky. 608; Tye v. Commonwealth, 3rd L. R. 59; Clary v. Commonwealth, 163 Ky. 48; Bullington v. Commonwealth, 193 Ky. 529; Music v. Commonwealth, 186 Ky. 45; Moore v. Commonwealth, 188 Ky. 505.

The evidence in question being admissible as a link in the chain and entitled to such weight as the jury might see fit to give it, its admission by the trial court was not error.

In view of the fact that the appellant must again be tried for the crime charged in the indictment, we will express no opinion respecting the weight or effect of the evidence contained in the record.

Because of the error committed by the trial court in refusing the appellant a continuance, the judgment is reversed and cause remanded for a new trial, not inconsistent with the opinion. The whole court sitting.