## Hamlin v. Commonwealth.

May 15, 1942.

J. C. Bird for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellant, a moonshiner, bootlegger, and generally disreputable character, according to the testimony, was convicted of murdering Roscoe Davis, and sentenced to death.

The homicide occurred between 7:30 and 8 o'clock on the evening of August 21, 1941, at the entrance to the yard of the residence of the victim's mother with whom he and his wife resided near the town of Gatliff. The mother, a seventy-three year old inebriate, with whom the appellant had spent the afternoon drinking while Davis was out hunting, testified that appellant left before her son arrived, returned shortly afterward, and called to her son to come out and drive him into town. Davis, who had gone to his sister's home which was in the rear of his mother's, responded by going to the gate and informing appellant that he was too tired to drive him that night. A conversation ensued, during which Davis "squatted down." A few minutes later he was shot by appellant with a sawed-off shotgun, one charge entering near the navel, and the other, the back of his neck and right shoulder. His body was found inside the yard about fifty feet from the gate and forty feet from the porch, one hand clasping a closed pocket knife and several matches. Except for the knife he was unarmed.

The defense relied on was that upon returning to his home after leaving the Davis residence, appellant decided to spend the night with a friend, and took his shotgun along to use in squirrel hunting the next day. On passing the Davis house he heard "Grandma Davis taking on on the porch," exclaiming, " 'Oh Lord, turn me loose I want to go to bed.' " Thinking she needed his assistance, he approached the gate and saw her son coming through the yard. After asking appellant who he was, Davis said, "I am going to kill you," and raised what appellant thought was a gun to his shoulder. Thereupon, appellant shot, re-loaded his shotgun, and fired again.

The evidence as a whole indicates that appellant returned to the Davis home in anger and killed Davis in a drunken rage because he had been threatened with "the law" by one of the women of the Davis family "if he didn't get that liquor and get out of there." However, he was entitled to a trial conducted under the rules of law, and this, we are persuaded, he did not have for the following reasons:

On his way home that afternoon Davis had stopped at the store of Howard Perkins, and the Commonwealth persistently tried to prove, and finally succeeded in so doing, that Davis had been told of appellant's presence at his home and was afraid to go there until appellant had left. Although the Court first ruled that conversations with the deceased indicating these facts were inadmissible, he eventually, over appellant's repeated and insistent objections, allowed several witnesses to relate what they had said to Davis, or what Davis had said to them on the subject, all, of course, in the absence of appellant. This was incompetent testimony of the most damaging character. Its object, obviously, was to portray the victim as a peaceful, inoffensive citizen, who was anxious to avoid trouble, and the appellant, as a desperado who might kill Davis if he entered his own house. In striking contrast, a neighbor, who testified for the Commonwealth heard Davis ask his mother when he entered the house, "Where is that God damn hairy faced thing at?" Whereupon, his mother said, "Sit down and behave yourself, there aint nobody here but me." Moreover, the testimony clearly showed that the previous relationship between the appellant and Davis had been friendly. But be this as it may, proof of the conversations occurring at the store in appellant's absence was clearly incompetent, and its admission necessitates a reversal of the judgment appealed from. Sain v. Commonwealth, 193 Ky. 215, 235 S. W. 368; Searcy v. Commonwealth, 188 Ky. 422, 222 S. W. 513; 22 Corpus Juris Secundum, Criminal Law, Section 740, page 1276, Section 744, page 1280; Roberson's New Criminal Law & Procedure, Section 438, page 579.

The only other error complained of is that appellant's counsel inadvertently began the examination of one of appellant's witnesses during appellant's absence from the court room. It is not necessary to discuss this alleged violation of the Constitutional (Section 11) and

Criminal Code of Practice (Section 183) provisions guaranteeing an accused the right to meet witnesses face to face, since it is not likely that the error will occur at an ensuing trial.

Judgment reversed.

The whole Court sitting.