## Edwards v. Commonwealth.

Oct. 17, 1944

368

Guy Shearer and Robert B. Hardison for appellant.

Eldon S. Dummit, Attorney General, and M. J. Sternberg, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

On Sunday morning, June 27, 1943, at about 3:00 o'clock, the body of Carl Heitlauf was found alongside and about twenty (20) feet distant from, Valley Road in Jefferson County, between Louisville and Elizabethtown. Two handkerchiefs were tied and knotted around his neck; a wound on the head appeared to have been caused by a blunt instrument. At about 8:00 o'clock on the morning of July 5, 1943, Lawrence B. Harvey, Wilma Haney, and appellant, Elbert Edwards, were arrested in Columbia County, Florida, after having been pursued by officers from Suwannee County, a distance of thirty-five or forty miles. The arrest was made pursuant to information that the three had attempted to commit robbery in the State of Florida. The suspects were taken into custody after they had been forced to abandon an automobile which was shown conclusively to have been the property of Mr. Heitlauf. Harvey separated from his companions upon abandonment of the

car, whilst Edwards and the girl remained together, retreating to a woodland. When apprehended, Edwards requested the arresting officer to shoot him and the girl, saying they would be willing to die together, and that he (Edwards) had sealed his doom in Kentucky approximately a week previous to the arrest. The officers searched the prisoners and the car, after which they drove the prisoners to the jail, wherein they were confined. A pin identified as the property of Mr. Heitlauf was found in the pocketbook of the girl. A pistol was found lying on the ground where Edwards was arrested; a holster and another pistol were found in the car. Other items of personal property, indubitably proven to have been owned by Mr. Heitlauf, were found in the automobile and the pockets of the prisoners. After they had been confined approximately two hours, the prisoners were asked if they cared to make a statement. Both Edwards and Harvey said they did; whereupon each, without the hearing of the other, confessed that they had kidnapped Mr. Heitlauf, forcing him to drive from Louisville toward Elizabethtown. A short distance out of Louisville they stopped, and required Mr. Heitlauf to alight from the automobile. Harvey gagged Heitlauf, and compelled him to walk to the rear of the car and off the road. Harvey's confession showed that he then tied the handerchiefs around the victim's neck, strangling him; whereupon he "clipped" him on the head and left him by the side of the road. Both confessions related that Edwards remained at the car while the murder was being committed by Harvey. Each confession related that Harvey and Edwards then returned to Louisville in Heitlauf's car; went to Wilma Haney's mother's home, and there were joined by Wilma; whereupon all departed for Florida in the stolen car. After traveling about the State of Florida they were apprehended in Columbia County. After confessing the crime, they were removed to Kentucky, jointly indicted for the murder of Heitlauf, and tried separately in Jefferson County. Edwards was convicted and sentenced to die in the electric chair for his part in the commission of the crime. Harvey did not appear as a witness at the trial, nor was his confession introduced; nevertheless, we have stated the substance of a portion of his confession, because it is necessary to a consideration of the most serious ground of the complaint that appellant did not receive a fair and impartial trial.

Many alleged errors are cited in support of appellant's contention that he did not receive a fair trial; the first of which is the contention that there was no competent evidence that the homicide was committed in Jefferson County, Kentucky. Edwards' statement in his confession that the victim was apprehended in Louisville, after which they drove out the Dixie Highway towards Elizabethtown, coupled with the evidence that the body was found on the road between Louisville and Elizabethtown at a point in Jefferson County, was sufficient evidence, uncontradicted as it was, to prove venue. Pictures of the deceased at the scene of the crime were exhibited to the jury, over the objection of appellant. The officer taking the pictures arrived at the scene several minutes after the body was found by other persons. He testified that the body had not been moved at the time the pictures were made. Of course, this testimony was hearsay; but there was no indication or evidence that the body had been moved, and, in the circumstances, we think the evidence was sufficient for the Court to conclude that the pictures fairly represented the condition of the body and the scene of the crime at the time it was first discovered.

The pistols were introduced in evidence, and it is insisted it was error for the Court to permit the officer who introduced them to testify that they were Army pistols. The objection to this testimony is that from it the jury could infer that the pistols had been stolen, thus evidencing the commission by appellant of another crime; and that it was not competent to introduce the pistols at all, because it was not shown that they were used in the offense charged. We see no merit in either of these contentions. It was proven that the wound on Mr. Heitlauf's head was produced by a blunt instrument, such as the butt end of a pistol. Edwards stated in his confession that a pistol was used to force the deceased to drive his car from Louisville to the scene of the crime. The evidence concerning the discovery of the pistols, therefore, was competent to substantiate the facts related by Edwards in his confession, which he repudiated on the witness stand. The pistols themselves were exhibited to the jury; the insignia of the United States Army was inscribed on them; therefore, the officer's testimony that they were Army pistols was cumulative, injecting nothing new into the evidence. Bullets were found in the car, and testimony of this fact was

introduced in evidence. The claim is made that this was improper, because no evidence was introduced relative to bullets having been used in the commission of the crime for which appellant was being tried. Such evidence, if it could be deemed incompetent, certainly was not prejudicial. We perceive no error in the admission of any of the testimony complained of.

Much time and much space in appellant's brief have been devoted to the contention that the confession introduced in evidence was unlawfully obtained, it being argued that it was coerced by appellant's confinement and plying him with questions. We have examined the evidence in this respect, and find no merit in this contention; but, conceding, arguendo, that the confession was obtained as the result of plying questions and other acts of coercion, complaint in that respect may not be entertained on this appeal. Appellant testified that he had not made a confession, denying he had ever seen the persons who testified that he did. He did not testify to any fact, either before the Trial Judge or the jury, in support of his contention that the confession was coerced. The contention now made is wholly inconsistent with his position throughout the trial, viz., that no confession was made.

It is insisted that the admission by appellant at the time of his arrest that he had sealed his doom in Kentucky a week previous to his arrest was incompetent, because it was shown that appellant had previously committed the offenses of (1) transporting a stolen car interstate; (2) violating the white slave act; (3) departing from the Commonwealth of Kentucky to avoid arrest; and (4) deserting from the United States Army; and that in making the statement complained of, appellant could as well have been referring to one or more of those offenses as to the one upon which he was being tried. We are not in accord with this contention. Had appellant, at the time of his arrest, been referring to the commission of any other crime than the one for which he was convicted, he had the opportunity to explain this fact to the jury.

Complaint is made that the Court did not instruct on the whole law of the case; and, by failing to give an instruction on voluntary manslaughter, erred, to the prejudice of appellant. We have often held that where no eye witness to the homicide is introduced, and the

proven physical facts admit of the theory that manslaughter or lesser degrees of homicide have been committed, it is the duty of the Court to instruct the jury on the various degrees of homicide. Bast v. Commonwealth, 124 Ky. 747, 99 S. W. 978, 30 Ky. Law Rep. 967; Davenport v. Commonwealth, 285 Ky. 628, 148 S. W. 2d 1054. But where the physical facts are such as to preclude the theory that the killing was the result of a sudden affray, or sudden heat and passion, the Trial Court is warranted in refusing to give an instruction on voluntary manslaughter. Wilson v. Commonwealth, 166 Ky. 301, 179 S. W. 237; Davenport v. Commonwealth, supra. The only physical facts proven in the case are that the victim was gagged, strangled, and hit on the back of the head. Under these circumstances, we find no evidence justifying an instruction on voluntary manslaughter.

Many complaints are made in respect to the argument of the Assistant Commonwealth's Attorney. Some of the statements complained of were based upon evidence, others were not; some were objected to, others were not. Those objected to at the time they were made were either not erroneous or not prejudicial; and all but one of the statements not objected to were not of sufficient significance to justify our reversing the case in the absence of objection at the time they were made. But one statement in the argument for the Commonwealth was so palpably unjustified by the evidence, and of such a character, as to have rendered it highly prejudicial to the substantial rights of appellant, considering the fact the death sentence was imposed. Harvey, who was Edwards' accomplice, did not testify, and no statement by him was introduced in evidence. At the time of the trial neither Edwards nor his counsel knew that Harvey had confessed to the officers in Florida; or, if they were in possession of that information, they did not know the contents of the confession, or the details of the crime related therein. But the Commonwealth's Attorney knew that Harvey had made a confession, and knew that the confession related that he (Harvey) was the one who struck the blow and tied the knot that caused the death of Mr. Heitlauf. He likewise knew that Harvey had stated that these acts were done without the knowledge of Edwards, and that Edwards was not in his immediate presence at the time he committed the murder. Of course, since the murder was committed in pursuance

of the commission of another crime in which both Harvey and Edwards were participants, the latter, in law, is deemed as guilty of murder as if he had actually struck the blow and committed the act resulting in death to the victim. Nevertheless, the Legislature has prescribed a greater and a less punishment for the crime, and either may be fixed by the jury in its discretion. The purpose of prescribing alternate punishments is to permit a jury to determine whether the defendant on trial has shown any circumstance in mitigation of the extreme penalty. If any distinction can be made (and such distinction, if made, is exclusively within the province of the jury), the one actually committing the act of murder would be deemed less entitled to mitigation of punishment than one technically guilty of murder but actually not engaging in the overt act which produced the death. With these facts and precepts in mind, we will consider the statement made by the Assistant Commonwealth's Attorney, which was: "It makes no difference in this case who did the killing. I don't know. He (meaning Edwards) says he didn't do it. Harvey says he didn't do it, * * *." Since Harvey did not testify, and no statement of his was presented in evidence, any reference to a statement made by him would have been improper, even if true. How much more reprehensible, then, was counsel's conduct in falsely quoting to the prejudice of the accused! The Supreme Court of the United States, speaking through Mr. Justice Sutherland, in Berger v. United States, 295 U. S. 78, 55 S. Ct. 629, 633, 79 L. Ed. 1314, said:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a

wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. * * *"

Of course, the attorney representing the Commonwealth is related to the Commonwealth in the same degree that the United States Attorney is related to the Federal Government. In East v. Commonwealth, 249 Ky. 46, 60 S. W. 2d 137, 139, the court said:

"* * * we have * * * emphatically said, likewise repeatedly, that it was no part of the duty of prosecuting counsel to vilify and abuse a defendant on trial, nor counsel representing him; nor did such counsel have the right to argue facts for which there was no testimony to sustain, and which could in no sense be deduced therefrom; nor did they have the right to state in their argument facts nowhere appearing in the record, and which emanated alone from counsel making the argument."

This statement of the law is so well established that further citation would be superfluous. It is so universal in its application that, we dare say, no authority to the contrary can be found. It especially is incumbent upon the attorney representing the Commonwealth to fully represent the evidence in its true light; because any statement uttered by him in a criminal case is more or less strengthened by his official position, since all men know it is his duty not only to endeavor to convict the guilty, but likewise to effect the acquittal of the innocent. The statement attributed to Harvey was one not only that he did not make, but it was in direct conflict with the statement he did make, and which the Commonwealth's Attorney at the time knew he had made. It is true that no objection at the time was made to the statement; but, where the defendant's life is at stake, technical rules of procedure must give way to the more lofty aim that justice may be done. As said by the Supreme

Court, in Brown v. Mississippi, 297 U. S. 278, 56 S. Ct. 461, 465, 80 L. Ed. 682:

"The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure, and wherever the court is clearly satisfied that such violations exist, it will refuse to sanction such violations and will apply the corrective."

It is far more important to society and constitutional government that the accused be accorded a fair and impartial trial than that he be required to forfeit his life in expiation of his crime, no matter how guilty the facts fairly adduced might have proven him to have been. For the reasons recited above, although no objection was made to the statement complained of, it was so highly prejudicial to the rights of the accused, considering the penalty involved, that this Court will take notice of the error and direct a reversal of the judgment, in order that a fair and impartial trial may be had. Other statements by the attorney for the Commonwealth were improperly made, but we will not lengthen the opinion by specific reference to them. Upon the next trial, he will limit his remarks to the facts proved or fair inferences adducible therefrom.

The judgment is reversed, with directions that appellant be granted a new trial, to be conducted in accordance with the views herein expressed.