# Ellison v. Commonwealth.

October 11, 1949.

Rehearing denied January 24, 1950.

758

John W. Willis and Campbell Howard for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

CHIEF JUSTICE SIMS—Affirming.

Raymond Ellison, about 37 years of age, was convicted of murdering his 12 year old wife and sentenced to death. He seeks to reverse the judgment on two grounds: 1. The verdict is not supported by the evidence and is the result of passion and prejudice; 2. incompetent evidence was admitted against him.

The evidence is wholly circumstantial, accompanied by proof of threats appellant made that he was going to get rid of his wife, together with some incriminating conduct on his part as well as remarks it was testified he made while a search was being conducted to find deceased. After the Commonwealth closed the case no proof was offered by or on behalf of accused and the case was submitted to the jury on the evidence for the Commonwealth.

Deceased was last seen on Friday afternoon, Mar. 26, 1948, and ten days thereafter, on Sunday, her body was found on the bank of Mud River with her head in the water and her legs and feet out of it. The river had been out of its banks and the backwater was receding when the body was found. It was clothed in a sweater, skirt and underclothes and there were lowcut shoes on the feet. There was a rag around the neck which was tight enough to make a mark.

Dr. Herman S. Parish, who examined the body when it was taken to a funeral home, testified there was no water in the lungs and the skull was fractured above the right ear by some blunt instrument. That there was a rag around the neck which left a mark and blood in the chest which could have been caused by strangulation. The doctor stated it was his opinion that the girl was dead when placed in the water and death was due to strangulation.

Russell O'Neil, County Attorney, testified over appellant's objection that accused had been charged with carnal knowledge of this girl in the Fall of 1947 and when he married her in December of that year this charge was dropped. Mrs. Harrison Sims, the mother of deceased, gave practically the same testimony as the county attorney relative to accused being charged with carnal knowledge of the girl and these charges against him being dropped when he married her in December 1947, just a few days before her twelfth birthday.

After their marriage the couple lived in an humble home in a remote section of Muhlenberg County about three-quarters of a mile from Mud River. Around 5 o'clock on Friday afternoon, March 26, 1948, appellant reported to his neighbor, Percy Beliles, that his wife was missing and requested Beliles to drive him to her father's home at Dunbar in Butler County, which Beliles did. Appellant stated to J. L. Benton that during the afternoon he had started walking to the town of Rochester to get his mail and some cigarettes when a cloud came up and he turned back and went home. Upon arriving there he found his wife was gone, as were her best clothes. Beliles testified that appellant had previously said to him he was going to get rid of his wife when the nine months were up.

Floyd Hatcher and Ray Benton also testified that appellant had told them he was going to get rid of his wife when the nine months were up. Charles Taylor, an ex-convict, stated appellant said to him, "They can make me marry her, but they can't make me keep her."

Percy Beliles further testified that when they did not find the girl at the home of her father on Friday night, he took appellant to the office of the county attorney the next day and advised appellant, "The best way to find her is to get bloodhounds." Appellant stated he had no money and when Beliles offered to raise the money, appellant said he did not want to do it and used these words, "I done looked at the electric chair once. The least I can have said about it, the better I can be." Thereupon, Beliles suggested organizing a searching party to which appellant said, "I don't want to do that. Me and you can go over there and look around." Mrs. Beliles heard appellant tell her husband he did not want to get bloodhounds and that he had faced the electric

chair once over this girl and didn't want to do that any more.

A searching party was organized and looked for the girl several days. During the progress of the search appellant went to the home of his niece, Mrs. Agnes Beliles, and in the course of a conversation with her he expressed the opinion that his wife would never be found. She told him the girl would be found, to which appellant replied, ''Yes, I guess that is so, but if they find her in the river, how are they going to prove I was the one that done it. It is hard to prove anyone done it when nobody seen them do it.''

J. L. Benton testified to the effect that after the search had been unsuccessful some of the men said they would start dragging the river the next day. Thereupon, appellant voluntarily surrendered himself to the jailer. The county attorney also testified appellant did this when it was suggested that the river would be dragged. Charles Taylor stated there was no feeling or threats against appellant to cause him to surrender himself to the jailer, but that appellant told him that he would feel safer in jail. While in jail appellant said to Taylor, ''I may be alive, and she may be dead, but when she was (is) found I guarantee she will have nothing in her mouth—no rags in her mouth.''

Thomas Givens, a neighbor, saw a fire in appellant's garden as if he were burning it off the last day of March or the first day of April, while the search was in progress. Witness found a piece of cloth in the ashes which he wrapped up and gave to the sheriff. G. R. Cannon, a merchant, testified he had sold deceased a coat the last of February or the first of March, and he identified this cloth as being a piece of the coat he sold her.

On Monday morning, following the disappearance of his wife on the previous Friday afternoon, a pair of wet trousers were found in appellant's home. The sheriff testified appellant in accounting for this fact told him his house leaked. The county attorney testified appellant accounted to him for the wet trousers by saying he had washed them about midnight Sunday.

The Sheriff, Otis Robinson, described tracks of a

man and a child he followed from accused's home to the river. He did not measure the man's tracks, but the child's tracks measured the same as the oxfords on deceased's feet when her body was found. Charles Taylor testified to these tracks and said only those made by the feet of the man went into the water and these tracks came out 8 or 10 feet upstream; that there was mud on some bushes about waist high some 30 feet from the water. According to Taylor, these tracks were the same as the size of appellant's shoes and those of his wife. Ed Buchanan described these tracks as "a man's tracks and a small woman's tracks;" that the man's tracks measured the same as appellant's shoes. Buchanan further testified there was mud on some bushes near the river which were broken off about waist high.

From this rather lengthy and detailed resume of the proof it is apparent there was sufficient evidence to take the case to the jury and to sustain the verdict even though the death penalty was inflicted. The evidence shows motive to get rid of his wife whom appellant married to escape prosecution upon a charge of carnally knowing a girl under twelve years of age, which the statute punishes by confinement in the penitentiary for life or by death, KRS 435.080. It further shows threats he made that he would get rid of her. Then too, there are the highly incriminatory statements attributed to appellant by friends, neighbors and a relative, such as he did not want bloodhounds brought in; that when his wife was found there would be no rags in her mouth; if she was found in the river nobody could prove "he done it." He asked to be put in jail when he learned the river was to be dragged. A piece of his wife's coat was discovered in the ashes of a fire he made in his garden. Appellant made contradictory statements as to why the trousers found in his house soon after his wife disappeared were wet. The majority of the court are of the opinion that the evidence, although circumstantial, when considered with the incriminatory statements and actions of appellant unerringly point to his guilt, and abundantly sustain the verdict.

Complaint is made that deceased's clothes introduced by the sheriff were not proven to be in the same condition they were in when she disappeared. The sheriff testified these clothes had been in his possession since

deceased's body was found and that they were in the same condition as when removed therefrom. In McCandless v. Com., 170 Ky. 301, 185 S. W. 1100, on page 1103, it was written that before clothing of the deceased may be admitted in evidence it must be shown "that the condition of it is the same as when he was found dead, or when the mortal wound or wounds were received." Of course, it was impossible to show this girl's clothing was in the same condition when introduced in evidence as it was when she was killed, but the Commonwealth did show it was in the same condition as when taken off her body, which is all that is required under the McCandless opinion.

Appellant relies upon Webster v. Com., 223 Ky. 369, 3 S. W. 2d 754. There, it was not shown where the clothing had been from the night of the homicide until the trial, and the clothing was properly excluded. The rule in the Webster case is the same as that enunciated in the McCandless opinion, which the former cites. It is the facts in the two cases which are at variance—not the rule.

Exception was taken to the admonition of the trial judge in telling the jury it would consider the evidence that appellant had been charged with and arrested for the carnal knowledge of this girl before he married her only for the purpose of showing motive, if it did so show. True, the court's admonition was premature as the sheriff had not then testified on what charge appellant previously had been arrested. However, it was later shown it was on the charge of having carnal knowledge of this girl, and the court gave the same admonition several times during the course of the trial; therefore, it could not have been prejudicial that he anticipated what the sheriff would say and he was premature in his admonition.

It is insisted that the trial judge erred in admitting evidence that appellant had been charged with carnal knowledge of deceased before he married her, as this was a separate and distinct offense. Generally, the rule is that evidence that accused has committed other crimes from that upon which he is being tried is not admissible. But there is a well-recognized exception to the rule, which is that when it is necessary to establish identity,

guilty knowledge, intent or motive for the crime, or when the other offenses are so interwoven with the one under trial that they cannot be separated from it, then such evidence is admissible. Richardson v. Com., 166 Ky. 570, 179 S. W. 458; Miller v. Com., 197 Ky. 703, 247 S. W. 956; Burns v. Com., 198 Ky. 319, 248 S. W. 848; Middleton v. Com., 204 Ky. 460, 264 S. W. 1041; Duvall v. Com., 225 Ky. 827, 10 S. W. 2d 279. We conclude, therefore, it was competent for the Commonwealth to prove that accused married deceased to escape prosecution on a charge of carnally knowing a girl under twelve years of age to show his motive for wanting to get rid of her.

Counsel for appellant urge a reversal of the judgment because the trial court erroneously permitted Mrs. Percy Beliles and her sister, Mrs. Rachel Knight, to state in the course of their testimony that deceased said she wanted to go home and stay with her mother, that her husband "didn't whip her, or anything like that, but he talked to me like I was a dog." No objection was made to this testimony. The commonwealth attorney asked Mrs. Knight: "Q. Did you observe her actions and conduct that day? A. Well, she seemed to be nervous. She told us she didn't want to stay there."

"The commonwealth attorney: Not what she said. Tell us what she did."

No objection was made to Mrs. Knight's testimony.

It is beyond cavil that the testimony of these two ladies as to what deceased said is hearsay and incompetent. Hamlin v. Com., 290 Ky. 669, 162 S. W. 2d 196 and authorities therein cited. It is a rule of long standing that any error during the course of a trial to which an exception is not then taken is waived and cannot be presented for the first time in the motion for a new trial. Logsdon v. Com., 11 Ky. Law Rep. 550, 12 S. W. 628; Chism v. Com., 286 Ky. 314, 150 S. W. 2d 694; Addington v. Com., 298 Ky. 275, 182 S. W. 2d 442.

In Edwards v. Com., 298 Ky. 366, 182 S. W. 2d 948, this court reversed a death penalty judgment where the commonwealth attorney made a highly improper and inflammatory argument although there was no objection to it, since we thought it was more important that the accused be afforded a fair trial than to have him pay with his life for a murder of which evidence fairly and

properly adduced might have proven his guilt. The evidence improperly introduced in the instant case was innocuous and did not have the prejudicial effect of the hearsay evidence erroneously admitted in the Hamlin case, 290 Ky. 669, 162 S. W. 2d 196. For the same reason the Edwards case has no application here.

Another ground for reversal relied upon by appellant is that the Commonwealth erroneously introduced in evidence over his objection and exception a picture of deceased in her coffin taken some fifteen minutes before she was buried. There is nothing sensational or shocking about the picture although it shows several wounds and abrasions about the head and face. We have written that it was not prejudicial to admit in evidence a picture of deceased where it showed a location of a wound, Waters v. Com., 276 Ky. 315, 124 S. W. 2d 97, and to show the condition of the body and the scene of the crime at the time it was first discovered, Edwards v. Com., 298 Ky. 366, 182 S. W. 2d 948. However, in the instant case the photograph of deceased in her casket had no probative value and should not have been admitted. We can see no reason for it being introduced except to arouse passion against the perpetrator of the crime. But if there was sufficient evidence to convict appellant of this wilful and brutal murder, he deserves the death penalty. Under the record before us we do not see how the jury could have returned any verdict except of acquittal or one inflicting the death penalty, as there were no mitigating circumstances. Therefore, we do not think the introduction of this photograph prejudiced the substantial rights of accused. In Calhoun v. Com., 301 Ky. 789, 193 S. W. 2d 420, we refused to reverse a death penalty judgment because a photograph of deceased was erroneously admitted in evidence.

Appellant lastly insists he could not obtain a fair trial in Muhlenberg County due to the fact there was great public feeling against the crime with which he was charged because in the May Term before he was tried in September, J. W. Crick had been convicted of murdering his wife and given life imprisonment. The answer to this contention is that no change of venue was asked by accused. If he or his attorneys were of the impression he could not receive a fair trial in Muhlenberg County, he should have applied for a change of venue

as provided by KRS 452.220. The venue of actions is fixed by law and cannot be changed except upon proper showing and in strict conformity with the provisions of the statute. Miller v. Com., 240 Ky. 298, 42 S. W. 2d 308. After trial and conviction appellant cannot for the first time claim he could not obtain a fair trial in the county and should have been granted a change of venue.

Perceiving no error in the record prejudicial to the substantial rights of appellant, the judgment is affirmed.

Judge Latimer and Judge Cammack dissent.