**Diamond HOLT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 9, 1962.

Joseph A. Montgomery, H. K. Spear, Somerset, for appellant.

John B. Breckinridge, Atty. Gen., Joe Nagle, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Diamond Holt, was convicted in the Casey Circuit Court of the crime of forgery and sentenced to confinement in the penitentiary for a period of two years.

Appellant, who was nineteen years of age at the time of the offense, lived with his grandmother, Emma L. Foley, age 72, in a residence located on the Casey-Russell County line. She had reared him from early childhood.

On August 20, 1961, appellant entered a service station in Liberty where he purchased three dollars and fifty cents' worth of gasoline for his car and presented in payment a check in the amount of $12.00 on which the name, Emma L. Foley, appeared as maker. The check was drawn on the First National Bank, Russell Springs, Kentucky. Holt endorsed the check in the presence of the service station operator who deducted the amount for gasoline and gave him the balance in cash. The check was returned marked "No Account." The cashier of the bank testified Mrs. Foley had money from her husband's estate deposited in the bank under the names of her daughters and that to draw upon the amount on deposit, she must sign the name of either daughter followed by her own signature. The check was marked "No Account" because the account was actually in the daughters' names, and not in the mother's.

When produced as a witness, Mrs. Foley testified that she had authorized her grandson on many occasions to sign her name and particularly when he needed gasoline for the tractor or the car, but she weakened her testimony considerably by failing to testify in a forthright manner as to whether she herself had signed this check. However, on August 31, 1961, appellant signed a confession which reads in part:

"That at about the hour of 10:00 O'Clock on the morning of Sunday, August 20, 1961, I endorsed a check in amount of $12.00 and delivered the same to Wayne Cochran and Claud Murphy, Marathon dealers, Liberty, Kentucky, for gasoline, and cash. Shortly before I delivered this check

to them I had forged it against Emma L. Foley, my grandmother, who knew nothing about it and who had no funds in the First National Bank, Russell Springs, Kentucky, the bank that the check was addressed to. I dated the check for August 18, 1961, writing said check in full and then forging and signing my grandmother's name to it. When I wrote the check I was on above Cochran's and Murphy's station at Sanders Lumber Mill.

"My aunts paid off five cold checks for me day before yesterday that I had given Leslie Roy, A. Thomas, John Ragle, all amounting to $71.00. but I—".

The last sentence of the above quotation had been stricken out by a line through the entire sentence. However, when a person examines the writing he is able easily to read the words purportedly stricken out except the final word which is not clear. These final words "but I—" (this final word being illegible) were written by pen, the rest of the sentence was by typewriter. The official who took the sworn confession stated that the line was drawn through the sentence after Holt had said that part was not true. At the trial of the case all the confession was read to the jury with the exception of that part through which a line had been drawn. However, over objection of appellant's counsel, the jury was permitted to examine the original confession and to read it. Thus the jury was able to read that part which purportedly had been deleted. Appellant contends that the introduction of this document was prejudicial error because the easily read words had a tendency to connect him with the commission of other similar crimes, that is, the issuance of cold checks.

■ Generally evidence that accused has committed other crimes than that for which he is being tried is not admissible except when necessary to establish identity, guilty knowledge, intent, or motive for the crime or when the other offenses are so interwoven with the one under trial that they cannot be separated. Ellison v. Commonwealth, 311 Ky. 757, 225 S.W.2d 470. Such evidence may sometimes be introduced to show a pattern or a system in the commission of a crime. Lee v. Commonwealth, Ky., 242 S.W.2d 984. In Thomas v. Commonwealth, 194 Ky. 491, 239 S.W. 776, in a prosecution for uttering a forged check and where evidence was admitted showing that about a month before the accused had presented a forged check in a similar fashion, the court held that such evidence was incompetent, saying:

"Here the other offenses were not only separate and distinct, but were far removed in point of time from the offense charged. There was nothing novel, unusual, or distinctive in the method or means employed to commit the crime charged and the other crimes proved. On the contrary, all the crimes were committed in the usual way, and no such connection between the other crimes and the crime charged was shown as to justify the inference that he who committed the former must have committed the latter. It follows that the evidence complained of was improperly admitted. Boyd v. United States, 142 U.S. 450, 12 Sup.Ct. 292, 35 L.Ed. 1077; Effier v. State, 4 Boyce (Del.) 62, 85 Atl. 731."

■ Appellant, Holt, had not signed a confession that "My aunts paid off five cold checks for me day before yesterday that I had given Leslie Roy, A. Thomas, John Ragle, all amounting to $71, but I—." These words were supposed to have been deleted after the typewritten statement was read to him. So, we have these damaging words submitted to the jury, without anyone vouching under oath to their verity or subject to cross-examination. In the cases cited above, the commonwealth introduced witnesses at the trial who gave testimony that other crimes had been committed and the reception of the evidence was safeguarded by the restrictions of legal procedure.

Here, no one attempted to prove that appellant had given "cold checks" to Leslie Roy, A. Thomas and John Ragle. Those men are not identified—nor is the occasion, nor the nature of the transactions, if in fact they occurred. Still the bald conclusion—sponsored by no one—was inspected by the jury.

We have concluded because of the injection into the trial of the possibility that appellant committed other crimes and the probability that the jury may have been influenced by it that the submission of the written confession in its existing form and condition was prejudicial error. On another trial the confession of this particular crime may be read to the jury but it should only be inspected by the jury after the deleterious words have been obliterated.

Judgment reversed.