**Alva BELL, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 24, 1966.

Frank E. Haddad, Jr., Louisville, Hugh D. Moore, Owensboro, for appellant.

Robert Matthews, Atty. Gen., Lloyd R. Cress, Asst. Atty. Gen., for appellee.

MOREMEN, Chief Justice.

Appellant, Alva Bell, was found guilty of the offense of armed robbery and his punishment fixed at life imprisonment.

The facts of the case are unusual. Witnesses for the Commonwealth proved that William H. Booth was manager of a company which sold oil products to retail gasoline service stations. The company appears to have been owned by Booth and other members of his family. Appellant Bell operated a service station and purchased various products from Booth for resale. He became indebted to Booth on open account. Appellant became delinquent

in the payment of the debt owed and Booth pressed hard for payment. During the period between July 1963 and July 1964, the debt increased to $800 and was secured by a note and mortgage on the equipment and inventory of the station. Later Bell returned to Booth's company some of the stock of merchandise which he had purchased and was given credit on the note and mortgage, leaving a balance due of $479.06.

In July 1964, Bell told Booth that he had found a way to raise the money and asked Booth to meet him at the station around nine o'clock in the morning of July 3. They met at that time, discussed inventories and similar matters and then Bell asked Booth how much he would reduce the account if the balance of $479.06 were paid in cash. Booth agreed to accept $450. In the meantime, Leonard Hayes arrived at the station and joined the two men. (He was employed by appellant at the new station he was operating at the time of the trial and had worked for him on other occasions.)

Bell requested a receipt in full for the money, and after it had been executed by Booth he counted out $450 in the presence of Hayes. Appellant persuaded Hayes to initial the receipt to show that he had witnessed the payment. Appellant told Booth that he wanted to ask him something about the greasing equipment in another part of the station and they went to the adjoining room. Booth testified that this occurred:

"And as we walked back there, Bell asked me, he said, 'What did you tell me what you would do with this greasing equipment?' And, as I said before, the first ten (10) minutes in there I was * * * we were discussing his inventory, and I recommended to him to clean it up and paint it. And I told him the same thing. I said, 'Well, Bell, I would paint that and get it cleaned up.' They were quite old pieces of equipment, and I had no more than said that, and I was looking at that greasing equipment, he turned

on me with a pistol in his hand. And he said, 'You give me that money back or I'll kill you.' And as he said it, he pulled the hammer back on the pistol. And this Hayes boy was standing in the office. As far as I know he never came back or even looked around the corner. Naturally it startled me and it scared me, and I reached immediately for my billfold. I did say something, the exact words * * I said, 'If it's that important to you, here's your money.' And I reached for my billfold and pulled it out, and took the money out in my hands. And I started counting it in my hands, and then he asked me to get in the stockroom. I imagine he was scared someone could possibly drive up. There was an open bay window there even though he had his back to it. And I said, 'No, I won't go in the stockroom.' I said, 'Here, I'll count it for you on the floor.' And I knelt down and counted the money out in one hundred dollar lots there, so that he could readily see that he was getting back the FOUR HUNDRED AND FIFTY DOLLARS ($450.00) that he had given me. And upon doing so, after I counted it out there, I just got up and walked out of the station."

Appellant Bell denied in detail the facts given in the above quotation. Hayes testified that after Booth had received the money he went to his truck and drove away.

The case was submitted to the jury under an instruction which has not been questioned and the jury believed the testimony of the prosecuting witnesses.

On this appeal it is urged that the trial court erred: (1) In admitting evidence of other crimes; (2) in permitting the jury to separate without appellant's consent.

A witness, Carlos Graham, who was credit manager and collector for Booth's company testified that on May 5, 1964—about two months before the day of the settlement at the service station—he met Bell at the station, presumably for the purpose

of collecting the indebtedness, and this occurred:

"When he got out of the car, why he walked over there where I was and he * * * he proceeded to grab me by the shirt collar and he said he was going to kill me if I didn't get out of there, if I ever came back in the station again. And also to tell Bill Booth that he'd kill him if he ever came to the station."

He stated that Bell did not flourish a weapon, but he said "he could kill me with his bare hands."

As was said in Roberson's Criminal Law, § 1794, "The rule that evidence of other crimes is not competent except in certain exceptional cases, is universal, and so manifestly correct that it needs no argument to sustain it." That rule has been adhered to by this Court. There are, however, some exceptions to that general rule in that evidence of other crimes than those for which defendant is being tried has been accepted where it is necessary to establish identity, guilty knowledge, intent, or motive for the crime or when other offenses are so interwoven with the one under trial that they cannot be properly separated. Holt v. Commonwealth, 354 S.W.2d 30. Sometimes such evidence may be introduced to show a pattern or a system in the commission of crimes. Lee v. Commonwealth, Ky., 242 S.W.2d 984. The assault and battery above described coupled with the threat to kill is certainly a separate public offense that is distinct from the alleged armed robbery which occurred some two months later.

We find nothing in the testimony admitted that brings it under any exception to the general rule. An explosion of violence by a man who had suffered a series of misfortunes (illness, fire damage to the gas station, indebtedness, et cetera) when hard pressed to pay a debt, does not establish motive or intent to commit a crime that only may be committed in frigid, cold-blood,

i. e., armed robbery. In fact, in cases involving such crimes, motive, intent and guilty knowledge are necessary conclusions to be drawn from the act done and the prosecution is not required to prove it specifically.

In this case there is no question as to identity, no contention that there was a general scheme or plan of criminal action. The two offenses were not interwoven and we find no exception under which the testimony given by the witness, Carlos Graham, falls. There is no claim that the act was done innocently or unintentionally. Appellant denied that the act was committed. We believe that substantial, prejudicial error was committed.

It is unnecessary to decide the second question raised by appellant because the event is not likely to recur on the next trial. However, all questions not specifically decided are reserved.

Judgment reversed.