## Cooley v. Commonwealth.

(Decided September 25, 1919.)

### Appeal from Christian Circuit Court.

1. Criminal Law—Appeal—Interfering With Verdict.—The verdict of a jury in a criminal case will not be reversed on appeal unless its finding is flagrantly against the evidence.
2. Criminal Law—Appeal—Homicide—Insufficiency of Evidence.— On a prosecution for homicide, evidence examined and held to sustain a verdict of manslaughter.
3. Criminal Law—Appeal—Reservation of Error—Examination of Witness.—Misconduct of the prosecuting attorney in asking the witness an improper question will not be reviewed where there was no objection to the question.
4. Criminal Law—Appeal—Questions Reviewable—Bill of Exceptions —Argument of Counsel.—Improper argument of prosecuting at-

torney which was not set forth in the bill of exceptions cannot be reviewed on appeal.

5. Criminal Law—Appeal—New Trial—Instructions.—Error in failing to give an instruction is not available on appeal where it was not relied on in the motion and grounds for a new trial.

ROBERT A. COOK for appellant.

CHARLES H. MORRIS, Attorney General, and BEVERLY M. VINCENT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Mamie Cooley, Oscar Cooley and Claude Grau were indicted by the grand jury of Christian county for the murder of Drew Ross, each being charged as principal and also as aider and abettor.

Separate trials were had and Mamie Cooley was convicted of manslaughter, and her punishment fixed at nine years' confinement in the penitentiary. She appeals.

Mamie Cooley and her husband conducted a disorderly house in the city of Hopkinsville, and Claude Grau was her paramour. On the night of the homicide several men had gathered at the home of Mamie Cooley and were engaged in shooting dice and playing cards. The body of the deceased was found the next morning on the railroad track with a bullet wound near his heart. It is conceded that he was shot in the home of Mamie Cooley. For several months Mamie Cooley and others who were present when the shot was fired denied all knowledge of the homicide. Ledley Catlett testified that Claude Grau and Oscar Cooley, the husband of Mamie, were gambling with the deceased. She heard lots of talk and after the shot was fired she left the house. On her return to the house, Mamie told witness not to say anything about it and that she would swear the witness was not there that night. Mamie also told witness that the deceased was killed that night. Some time later, W. D. Hawkins, the night chief, and J. J. Cliborne, the sheriff, testified that they approached the home of Mamie Cooley and heard her and Claude Grau in an angry discussion about $60.20. Claude said to Mamie, "I know enough on you to break your damned neck." Mamie said, "I know just as much on you as you do on me," or something to that effect. On another occasion Grau

said to Mamie in the presence of John Chaffin, "I know enough on you to break your G— damned neck, and you will be in jail by six o'clock." Mamie said, "Well, they will break your neck, too." On direct examination Mabel Harris also testified that Mamie said to her that there was a man at the war who helped to do the killing, and she could send and have him brought back if she wanted to. She further said that the man at the war and Mr. Cotton (Claude Grau) took the body away from the house. On cross-examination the witness was asked what Mamie said about it. Her answer was as follows: "She said he was at the war—this man who helped her and Mr. Cotton kill this man—and she could send and have him brought back here, but she wasn't going to do it." On being asked who did she say took the body from the house, witness answered, "She said her and Mr. Cotton and that man at the war." In reply to the question, "And what did she say they did with it"? witness answered, "She said they carried it up on the railroad." On re-cross-examination, witness testified as follows:

"Q. Did you testify on the trial here the other day? A. Yes, sir, I did. Q. In your statement to the jury then did you state that she said that she and Mr. Grau and this man at war killed this man? A. That is what I aimed to state. Q. Don't you know you didn't state that? A. No, sir, I don't know. Q. Don't you know you didn't state that? A. I think I did. Q. You are not certain about it though. You don't know now whether you really made that statement or not, do you? A. I think I made it; I said what they told me. I didn't say what I knowed, but what they told me; that is all I could state. Q. What do you mean, they told you? A. I mean Miss Mamie Cooley and Mr. Claude Grau and the man at the war. Q. That is what she told you—that is what you stated? A. Yes, sir, that is what she told me."

Mamie Cooley testified that several were there at the time of the killing but Claude Grau was not present. At the time of the killing the men were playing cards. She was inside of the kitchen writing a letter to her sister. Ross said that he was being cheated. Oscar Cooley then came into the kitchen and got the pistol out of the stove. When he went back into the room, Ross was standing up and stated that any man who said that he had not been cheated was a G— damned liar. Then

Oscar shot him. Some of those present started away with the body. When the men returned, they divided about $72.00 and some odd cents among themselves. Of this sum, however, about $20.00 had been won in the poker game. She had denied all knowledge of the affair because she was afraid to tell it, and in order to shield those who were present. She further denied making any statements in the presence of Chaffin or Mabel Harris. On cross-examination she admitted that she had said that she did not know anything about the killing. She did not take any part in the affair but begged her husband not to shoot the deceased. She admitted making an affidavit to the effect that two negroes came in with masks on and passed around the corner of the house carrying the dead man. She made this affidavit in order to shield those who were present. She further stated that she cut out a portion of the carpet, but this was done because it was worn and not because it had blood on it.

It is earnestly contended that the verdict of the jury is not sustained by the evidence. Under the well settled rule in this state we cannot reverse the verdict of the jury in a criminal case unless its finding is flagrantly against the evidence. Martin v. Com., 178 Ky. 439, 198 S. W. 1158. On the one hand we have the statement of Mamie Cooley that her husband killed the deceased and that she took no part whatever in the homicide. On the other hand it is shown that the homicide took place in her home; that the body of the deceased was placed on the railroad track; that Mamie Cooley attempted to conceal the homicide and denied all knowledge of it; that she subsequently made inconsistent statements in regard to it; that Grau stated to her that he knew enough on her to break her damned neck; that she replied that she knew as much on him as he did on her, and that she admitted to Mabel Harris that the man at the war helped her and Grau kill the deceased and that she assisted in placing the body of the deceased on the railroad track. In other words we have the admission of the accused that she was concerned in the homicide, besides other circumstances tending to show her guilt. In view of this evidence, we cannot usurp the function of the jury and say that Mabel Harris, to whom the admission was made, was not worthy of belief, and not being able to do this, there is no basis for holding that the verdict is flagrantly against the evidence.

Another complaint is that the Commonwealth's attorney was guilty of improper conduct in interrogating a witness for the defense. It appears that he asked the witness the following question: "Well, don't you guess you are lying about it now"? The witness answered, "No, sir." Thereupon, the Commonwealth's attorney said, "I beg your pardon. Maybe I ought not to have said that." It appears, however, that there was no objection to the question, and that being true, it cannot be relied upon as a ground for reversal.

Still another ground urged for reversal is improper argument by the Commonwealth's attorney. In reply to this contention it is sufficient to say that the alleged improper argument is not set forth in the bill of exceptions and cannot therefore be reviewed. Frey v. Commonwealth, 169 Ky. 528, 184 S. W. 896.

It is further argued that the court erred in failing to give an instruction on self-defense. It does not appear that the failure to give other instructions was relied on in the motion and grounds for a new trial, and the error, if any, is not available on appeal. Owens v. Commonwealth, 181 Ky. 378, 205 S. W. 398.

Judgment affirmed.