## McCollum v. Commonwealth.

(Decided July 1, 1924.)

### Appeal from Madison Circuit Court.

1. Witnesses—Conversation of Accused with Brother-in-Law Held Admissible as Affecting His Credibility.—Where killing of father-in-law grew out of separation of accused and his wife, and accused testified that he did not know why his wife left him, it was permissible to ask him concerning conversation with brother-in-law, wherein brother-in-law stated, and defendant admitted, that he shot around wife's feet and terrorized his wife, and, on his denial of conversation, to show that it occurred, as affecting credibility.

2. Criminal Law—Misconduct of Attorney Not Considered, Because Not Appearing in Bill of Exceptions.—Misconduct of attorney in closing argument cannot be considered, where it or any objection, ruling, or exception does not appear in bill of exceptions, in view of Criminal Code of Practice, section 282.

BURNAM & GREENLEAF and G. M. SMITH for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER —Affirming.

Appellant, Matt McCollum, indicted for murder and found guilty of manslaughter by the jury that tried him, prosecutes this appeal from the judgment of the Madison circuit court imposing a sentence of 21 years in the penitentiary as his punishment, that being the penalty fixed by the verdict of the jury. The facts of the case briefly are these: Appellant and his wife had been separated about two weeks, and about ten days previous to the homicide she had sued him for divorce and attached all his property. After the separation she went to the home

of one of her brothers to live. Her father also lived with that brother. About five o'clock p. m., of December 25, 1923, appellant went to the home of his brother-in-law, where his wife was staying. When he arrived there he found his father-in-law, Baylis Wilson, his wife, one of her brothers, one of her sisters and a brother-in-law and a sister-in-law. The persons present seem to have greeted appellant in a friendly manner when he first entered the home and he seems to have returned their greeting in the same friendly spirit. Part of them were eating supper at the time appellant reached the house and he was invited to partake' of the meal with them. He declined to do so, stating that he already had had his supper. After supper was over and they had all gathered into one room appellant raised the question as to his wife returning to their home with him; and, as between appellant on the one side and his brothers-in-law and sisters-in-law on the other, the testimony is conflicting as to what happened and what was said. They, for the Commonwealth, testified that, after appellant's little boy, four years of age, had gone to his father and cried about a pair of shoes that the father had sent him that afternoon not fitting, appellant arose and demanded of his wife that she get her things and get the children ready and return to his home with him. In the discussion that followed appellant charged all of them with having persuaded his wife to leave him and compelling her to remain away from him. Her father, Baylis Wilson, denied that they had done so, and stated that if she desired to do so she could return home with him. They testified that appellant thereupon said to Baylis Wilson, "You are a G— d— liar," and as Wilson started to arise from his chair appellant drew his pistol and fired three shots into his body in rapid succession. They all testified that Baylis Wilson had no weapon of any kind and made no demonstration of any kind toward appellant. After the shots were fired, according to the testimony of the witnesses for the Commonwealth, Gillis Wilson, a son of Baylis Wilson, seized appellant and the two of them in the struggle for the possession of the weapon got out of the house and out into the yard, and that there the weapon was finally taken from appellant by Clarence Hoskins, his brother-in-law, and appellant then left the scene of the difficulty. Appellant testified that he merely requested his wife to return to their home with him and

that the difficulty was brought on by decedent and his sons and daughters interfering to prevent her going. According to his testimony, while they were talking about whether his wife should go back home with him, Gillis Wilson attacked him with a knife and striking at him wounded him in one of his hands which he threw up to ward off the knife thrust. He stated that he thereupon drew his pistol to defend himself; that it was grabbed by Gillis Wilson, and that in the struggle between them over the pistol it was discharged and without his intending it the bullets struck and killed Baylis Wilson.

It is vigorously insisted for appellant that the judgment should be reversed because of incompetent evidence permitted to go to the jury. It was the theory of the Commonwealth that appellant possessed of the belief that his wife's father and brothers were responsible for her having left, him armed himself and went to their home on the occasion in question to avenge himself of the supposed wrong. Appellant testified that he did not know any reason for his wife leaving him, and that he had done nothing to justify it. Upon cross-examination he was asked by the attorney for the Commonwealth if he had not had a conversation only some two or three days before the homicide with one of her brothers with respect to their separation. He was asked if in that conversation her brother did not state to him that as he understood it his sister had left appellant because he had shot around her feet several times with a pistol and had sat up all night in a drunken condition with a razor in his hands and so terrorized his wife that she was afraid to live with him any more. Appellant denied that her brother had made such a statement to him. He was then asked if in that conversation he didn't admit that he had been drunk on blackberry wine one night and that he did shoot around his wife's feet, and appellant denied that. The Commonwealth introduced Barnett Wilson and contradicted appellant as to the testimony above indicated. Objections and exceptions were offered and saved for appellant. The court admonished the jury to consider that testimony only for the purpose of affecting the credibility of the defendant, if it did affect his credibility, and for no other purpose. It is earnestly insisted by counsel for appellant that the introduction of this testimony was highly prejudicial to appellant in that it permitted to go to the jury evidence of the commission of other offenses by appellant other than the one for which he was being

tried, and permitted him to be contradicted about a matter entirely foreign and unrelated to the crime for which he was being tried.

We cannot hold with appellant's contention on this question. This homicide grew out of the separation of appellant and his wife. That was the motive shown by the Commonwealth for appellant killing deceased. It also was offered by defendant as the motive that prompted his wife's brother to attack him and thereby bring on the difficulty that resulted in the death of deceased. We are of the opinion that the court below properly permitted appellant to be interrogated and contradicted about the facts of the conversation in question.

The misconduct of the attorney for the Commonwealth in closing the argument in this case urged by appellant as a reason for a reversal of this case cannot be considered by us because it does not appear in the bill of exceptions. The bill of exceptions does not show that any objection was made to any of the argument for the Commonwealth or that the court ruled upon such objection or that an exception was taken to the ruling of the court. We are permitted to consider only the errors occurring upon the trial of the case that appear in the bill of exceptions. Criminal Code, section 282; Frey v. Commonwealth, 169 Ky. 528; Combs v. Commonwealth, 160 Ky. 386; Hendrickson v. Commonwealth, 147 Ky. 299.

No other question was raised for appellant as his case was presented by the brief of his counsel. We find no errors prejudicial to the substantial rights of appellant appearing in the record, hence the judgment of the court below is affirmed.