## Wilson v. Commonwealth.

(Decided October 1, 1926.)

### Appeal from Breathitt Circuit Court.

Bastards.—In prosecution under Ky. Stats., section 1220, for concealing birth of bastard child, evidence held insufficient to sustain conviction, in that it did not appear that defendant gave birth to any child.

DUNN & STAMPER for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant was indicted charged with the offense denounced in section 1220, Ky. Statutes.

That section is as follows:

"If any woman be delivered of any issue of her body, which, being born alive, would be a bastard, shall endeavor privately, by drowning or secretly burying the same, or in any other way, directly or indirectly, to conceal the birth thereof, so that it may not be known whether it was born alive or not, she

shall be confined in the penitentiary not less than one nor more than five years."

It is a prerequisite of the offense named (1) that issue shall be born to the woman charged, and (2) that such issue if born alive would be a bastard. Obviously, therefore, if upon the trial of such a charge the Commonwealth fails to show that any issue was born to the woman charged, the prosecution must fail.

As the court has reached the conclusion there was a total failure to show that appellant upon the occasion in question, or any time shortly theretofore, gave birth to any child, this opinion will be confined exclusively to a recital of the evidence showing such failure, and will consider no other question.

Appellant is a widow 39 years of age, and at the time of the occurrences hereinafter detailed her husband had been dead three years. On Saturday June 13, 1925, she went from her home near Jackson to the home of her uncle, Dan Little, five miles from Jackson and remained there until the next Friday, the 19th of June. On the afternoon of Tuesday, the 16th, she had what is described in the evidence as a "flooding spell," and the prosecution is based upon the idea that she then gave birth to a child. Whether upon that occasion she was only profusely or unusually flooding at her regular periods, or whether she then gave birth to a child must be determined from the evidence.

The first witness introduced by the Commonwealth was Nannie Little, the wife of Dan Little, who states that when defendant came to her home there was nothing unusual about her appearance, although a little fuller in the face than usual, but that her body and form showed no indication that she was pregnant or that anything was the matter with her; that on Tuesday afternoon she took a spell of flooding, which condition she called to the attention of the witness, and then went into the room and sat down on the bed; that witness went into the room where defendant was and got her some cloths and then witness proceeded to get supper; that when supper was ready defendant declined to eat anything, saying that she was not hungry, but that after supper when witness went into defendant's room she said she was feeling better and there was nothing the matter with her. That witness then went to milk and was gone about thirty or

forty-five minutes, leaving her husband, Dan Little, in the room with defendant; that defendant went to bed about seven o'clock and about eight o'clock witness went to bed in the same bed with her, and they stayed together all night; that before witness went to bed defendant complained of feeling bad and witness got some water and washed her face, and the defendant then complained no more and was quiet and appeared to sleep and rest well all night. That witness next morning got up and made a fire in the cook stove and defendant a few minutes thereafter came into the kitchen with the slop jar in her hands and said she would go to the hole of water by the smoke-house near the house and wash the rags and clean them up; that after breakfast defendant said she believed she would wash the clothes that day and witness advised her not to try to do so, but defendant insisted that there was nothing the matter and that she could wash, and that she did wash and put on the lines a big washing that day. That on the night before the defendant had not left the house and did not get out of the bed as the witness believed, and she did not think it was possible for the defendant to have left the house that night without awakening the witness. That on the next day, Thursday, the defendant again washed another big washing and put that on the lines, and that defendant did not complain any while she was working either of these days and ate heartily all the time and slept good at night; that then on Friday she ironed these two washes she had done the two previous days, and left her home that afternoon for Jackson on foot to walk a distance of five miles, and that defendant during that period showed no evidence of having been confined or having a miscarriage.

This witness further says that on Friday, the day defendant left her house, and thereafter, the body of a child was found on their farm about seventy-five or one hundred yards from the house, and that the baby's body was badly decomposed when found.

William South, who ran a store on Cane creek, stated that defendant stopped in his store on the 13th day of June, 1925, presumably as she was going to her uncle's home, "and that she looked larger than common and full about the face, and that he thought she was pregnant with child." He then states that on the following Friday after she had left Dan Little's house he again

saw her and she appeared to be smaller and looked as if she might have had a baby or miscarried.

William South's wife gave similar testimony as to defendant's appearance on the 13th of June, but did not see her after she left Dan Little's house.

The last two witnesses are shown to be hostile to defendant.

The next witness for the Commonwealth was Katie McIntosh, who testified that she had washed for defendant in the month of April, 1925, and had washed some garments for her disclosing that she had just had her menstrual period.

The Commonwealth also introduced Dr. Dan Kash, who testified that he had read and heard of three cases in all where women had gotten up and attended to their household duties immediately after giving birth to a child, and that he supposes, therefore, that such a thing is possible, but that it is very unusual, and that he had never known or heard of a women just after being confined in childbirth or having a miscarriage washing and ironing clothes.

This was all the evidence for the Commonwealth, and the defendant asked that the court direct the jury to find her not guilty, which motion the court overruled.

This evidence needs no analysis to establish that it is wholly insufficient to show this woman upon the occasion in question gave birth to a child, and of course if she did not bear a child she could not have concealed its body. The evidence of Mrs. Little proves only that the woman upon the occasion in question had possibly an unusual flooding at her menstrual period, and proves even more conclusively by what occurred at the time and for three days thereafter that she did not give birth to a child, or even have a miscarriage. Not only so, her evidence is convincing that defendant never had any opportunity during that night or the next morning to have taken the body of the child, if she had given birth to one, away from the house. The evidence without contradiction also shows that the body of the child found on the Friday afternoon thereafter was badly decomposed, and if it had been placed where found by this defendant or any other person on Tuesday night or Wednesday morning before that it would not have been in that condition.

In any aspect of the case, and from any angle from which the evidence may be considered, it wholly fails to show that this appellant either gave birth to a child upon that occasion or had opportunity to conceal its body.

It is fair to the defendant to say that her evidence is practically the same as that of Mrs. Little, except that she adds positively that she gave no birth to a child upon that occasion, and that she knew nothing of the body of the child that was found near her uncle's home.

Because of the court's refusal to give the directed verdict asked for the judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.