# Hudson et al. v. Commonwealth.

(Decided February 12, 1929.)

G. B. STAMPER for appellants.

J. W. CAMMACK; Attorney General, and GEORGE HUNT MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

A. C. Hudson shot and killed Arnold Mann in Knott county. The grand jury of that county indicted him and his brother, Robert Hudson, for murder. In addition to alleging a conspiracy, the indictment charged A. C. Hudson as principal and Robert Hudson as aider and abettor. The case was transferred to, and tried in, Breathitt county. The jury found A. C. Hudson guilty of murder and Robert Hudson guilty of manslaughter. They fixed the punishment of the former at imprisonment for life, and of the latter at imprisonment for five years. Both have appealed.

The homicide occurred late in the afternoon. For a good while before the homicide, the deceased, Arnold Mann, Robert Hudson, Joe Fugate, Chester Vires, and

others were together at South Hudson's logging camp a few yards from his residence. Mann had on hand a supply of liquor, of which those present partook quite freely. None of the witnesses testified to any acts or words on the part of Mann or Robert Hudson indicative of any enmity or bad feeling between them. On the contrary, all agree that their relations were apparently cordial and friendly. During the course of the afternoon, Mann fired several shots at a rock. According to Joe Fugate, this was done at the suggestion of Robert Hudson. Fugate also says that, after firing the shots, Mann looked for more cartridges, and turned his pockets inside out, thus disclosing that he had none. Just prior to the homicide, the evidence discloses that Robert Hudson and Joe Fugate left, and went to the home of A. C. Hudson, located a few yards away. At that time Mann was either lying down or sitting on a pile of rocks. They reached A. C. Hudson's home, and Robert went inside and came out with a single barrel shotgun. Fugate says that, when Robert came out of the house, he was crying, and said that "Arnold Mann had run over him as long as he was going to and get away with it." When this occurred, A. C. Hudson took hold of the gun, shoved Robert backwards, and told him to give up the gun. Fugate further says that, after A. C. took the gun, he asked Robert for a cartridge, and Robert gave it to him. A. C. Hudson then went up the road in the direction of Arnold Mann. At that time Mann was lying down with his head in his hands. When A. C. Hudson got within a few feet of Mann, he fired. He then backed off a few feet, broke his gun, and reloaded it. He then fired a second time. Though Mann had his pistol in his hand, he never fired at A. C. Hudson or attempted to shoot him. Granville Joseph saw the killing, and, if Mann was doing anything he did not know—he could not see him plain. According to Linden Joseph, who was near by, A. C. Hudson walked faster than an ordinary walk as he approached Mann. He saw Hudson fire the two shots. He saw Mann through a crack in the fence, and he did not see anything in his hand. Ethel Joseph saw A. C. when he took the gun from Robert and as he went in the direction of Mann, but saw only the blaze of the gun. Calla Smith saw A. C. Hudson walk up and shoot Mann with a shotgun. Mann was lying there on some rocks. He did not see Mann

doing anything. The only thing to prevent him from seeing was that Vires was lying on this side of Mann.

On the other hand, Robert Hudson testified that he and Mann were perfectly friendly; that he never told Mann what to shoot at; and that Mann never turned his pockets out. He says that he went to A. C. Hudson's home with Joe Fugate, who wanted to make arrangements about boarding there. When he came out of the house, he was not crying, and he did not say that Arnold Mann had run over him as long as he was going to and get away with it. When he came out he had the gun and a pint bottle. He intended to go up to the hollow and get some more liquor from Calla Smith. He carried the gun along because everybody carried weapons. When he came out of the house, A. C. asked him where he was going, and he told him he was going to get some more liquor. A. C. said, "You sit down here, you have all the liquor you need, you are not going. I am going to get the cow, give me that shotgun. I will take her with me, you might get into something." He then sat down and crossed his leg. He never gave A. C. any cartridges. After A. C. left, he went to South Hudson's, stepped in the door, and was standing there.

A. C. Hudson testified that he had known Arnold Mann, and never had any trouble with him before the day of the homicide. He kept a single barrel shotgun in his house. He heard some shots fired up the road. After hearing the shots, Robert Hudson came down with Joe Fugate. Robert wanted to know if Joe could board with him. He told him that Joe could if he would sleep with Robert. Joe remarked that he was so drunk that he could hardly stand up. After that Robert went into the house, came out with a shotgun in one hand and a pint bottle in the other. He asked Robert where he was going. Robert said he was going up the creek to get some more liquor. He told Robert that he did not need any more liquor, and was not going, then took hold of the shotgun and told Robert to sit down. He then told Joe not to let Robert go up the creek. He started up the creek to get his cow. As he came to where Arnold Mann and Charley Vires were sitting, Arnold came up with his pistol and pointed it at him. When Arnold did this, he shot. He then backed off two or three steps, and Arnold came up with the pistol again, when he fired the second shot. Arnold snapped the pistol one time before he ever shot at Arnold. His cow was in the habit of running back there.

South Hudson testified that a man standing in his yard and looking towards Arnold Mann could have seen a little through the crack in the fence, but could not have seen very much.

Will Henry Hudson, a brother of appellants, testified that Mann was sitting under the fence from him. Mann raised his pistol and she snapped. A. C. Hudson fired. Mann came up with his pistol again. According to Ab Miller, A. C. Hudson walked in an ordinary gait as he approached Mann. He heard the shooting, but Mann was the only one he saw with a pistol. Mann snapped his pistol two or three times before A. C. shot. Mack Hicks saw one shot fired. He could not see Arnold Mann for the smoke. The affidavit of the absent witness, Alex Fugate, was admitted to be read as a deposition. The affidavit corroborates A. C. Hudson with respect to Mann's first drawing his pistol on him.

Counsel for appellants insist that, if there ever was a case where the verdict was flagrantly against the evidence, this is one. It must not be overlooked that the credibility of the witnesses is for the jury. Hence it is their peculiar province to weigh all the evidence and to take in consideration, not only all that was said by the witnesses, but their demeanor on the stand, their interest in the result of the trial, their relationship to the deceased, and all the attending circumstances. In view of the power thus confided to the jury, its members have the undoubted right to believe one set of witnesses and disregard the evidence of others, and, even though they accept the testimony of one witness for the commonwealth as against several for the accused this fact alone will not render the verdict flagrantly against the evidence. Christie v. Commonwealth, 193 Ky. 799, 237 S. W. 660, 24 A. L. R. 599; Kennedy v. Commonwealth, 194 Ky. 502, 239 S. W. 796; Lambdin v. Commonwealth, 195 Ky. 87, 247 S. W. 842; Mattingly v. Commonwealth, 199 Ky. 724, 251 S. W. 953. If the testimony for appellants is to be believed, A. C. Hudson took the gun from Robert because he did not want Robert to go after more liquor or to get into trouble. He then started up the hollow to look for his cow. As he approached Mann, Mann raised his pistol and attempted to shoot him. He then fired in self-defense. On the other hand, if the testimony of the witnesses for the commonwealth is to be believed, A. C. Hudson was inflamed by Robert's remark that Arnold Mann had run over him as long as he was going to and

get away with it, and immediately went to the place where Mann was lying and shot him without justification or excuse. It is true that the greater number of witnesses testified for appellant, but the majority of them are relatives. In determining whether Mann was the aggressor or not, the jury had the right to take in consideration the evidence to the effect that Mann had no cartridges, and the improbability of his attempting to shoot A. C. Hudson with an unloaded gun. On the whole, it cannot be said that the verdict as to A. C. Hudson is flagrantly against the evidence.

With respect to Robert Hudson, an entirely different situation is presented. In order that a person may be convicted as aider and abettor of a felony, he must not only be actually or constructively present at the time of the crime, but must have rendered assistance or encouragement to the perpetrator of the crime with knowledge of his felonious intent. While it is true that to constitute an aider or abettor it is not necessary that there should be a prearrangement or mutual understanding or concert of action in the commission of the crime, yet in the absence of these factors, or some of them, it is essential that the one so charged should in some way by overt act or oral expression have encouraged the principal in his unlawful acts. Combs v. Commonwealth, 224 Ky. 653, 6 S. W. (2d) 1082. There is the suggestion that probably Robert induced Mann to use all his cartridges so that he could not protect himself. As all the witnesses agree that Mann's and Robert's relations preceding the homicide were altogether friendly and cordial, the probability that Robert, with the view of a subsequent attack on Mann, suggested that Mann shoot at the rock for the purpose of having him use up all his cartridges, and thus putting it out of his power to protect himself, is entirely too remote and speculative to afford a reasonable inference of Robert's guilt. The only other circumstance relied on is his statement that Mann had run over him as long as he was going to and get away with it. It is not claimed that Robert did or said anything to induce A. C. Hudson to act. If knowing of A. C.'s purpose, he had furnished the gun and cartridge, or if he had assisted A. C. in any way after A. C. started, a different case would be presented. However, all that the evidence shows is that, after Robert's remark about Mann, A. C. demanded the gun and cartridge, and Robert surrendered them to him. There is no suggestion in the evidence that at the time

Robert surrendered the gun and cartridge he knew of A. C.'s purpose to injure Mann, or that he said or did anything then or after A. C. left that could be construed into aid or encouragement. We are therefore constrained to the view that the verdict finding Robert guilty as aider and abettor is flagrantly against the evidence.

A reversal is also asked because of certain remarks alleged to have been made by the commonwealth's attorney in his argument to the jury. We find, however, that the alleged improper argument is not set forth in the bill of exceptions, and we have uniformly ruled that, unless this is done, it cannot be considered on appeal. Hendrickson v. Commonwealth, 147 Ky. 298, 143 S. W. 993; Cooley v. Commonwealth, 185 Ky. 142, 214 S. W. 898.

There is the further contention that a new trial should be granted because of the separation of the jury. This ground was not relied on in the original motion and grounds for a new trial, but was embraced in additional motion and grounds for a new trial filed at the succeeding term, and after the original motion and grounds for a new trial had been overruled. In the circumstances, the additional motion and grounds came too late, and the trial court did not err in refusing to permit them to be filed, or in refusing to grant a new trial on the ground therein set forth. Commonwealth v. Brogan, 163 Ky. 748, 174 S. W. 473; Wilson v. Commonwealth, 215 Ky. 759, 286 S. W. 1065; Commonwealth v. Neal, 223 Ky. 665, 4 S. W. (2d) 685.

Wherefore the judgment is affirmed as to A. C. Hudson and reversed as to Robert Hudson, and the cause remanded for a new trial consistent with this opinion.