## Anderson v. Commonwealth.

May 10, 1946.

Carroll & Moran and Marion Rider for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

William Leonard Anderson appeals from a judgment of the Jefferson Circuit Court wherein he was adjudged guilty of the crime of murder and his punishment fixed at death.

On November 18, 1944, which was Saturday, Mr. Louis Hamburg's dead body was found lying on the floor in a small room at the rear of his store at 227 South Preston Street, Louisville, Kentucky. His hands were tied together in front of him. A towel, apparently used as a gag, was tied around his head. His face was covered with blood. An autopsy disclosed bruises about the head, neck and chest, and fractures of the skull, ribs and larynx. An indictment was returned on the 8th day of December, 1944, charging Jack Wright and the appellant, Anderson, with the murder.

A severance of trials was granted. It appears that

Jack Wright was tried first but this record does not disclose the result of his trial.

The appellant was tried on May 23, 1945. Upon the call of the case the preceding day, the Commonwealth announced not ready because of the absence of one witness, Walter Wright. The appellant announced ready. It apparently was then agreed, in order to save time, that a jury should be empaneled awaiting the location of the absent witness. A jury was selected and empaneled but not sworn. The witness had not been located at the time for the noon adjournment. Apparently, at the request of the court, counsel agreed that the jury might separate. Upon reconvening in the afternoon, the absent witness had not yet been found and court was adjourned over to the next day, the jury again being permitted to separate. The following morning the jury was sworn and the trial commenced. The lower court again permitted the jury to separate when time for the noon adjournment arrived. The record shows that counsel agreed that the jury might separate again during this adjournment. The case was concluded in the afternoon and the jury returned its verdict.

The evidence for the Commonwealth discloses that Jack Wright, his brother, Walter, and the appellant left the home of Jack's mother about 5 o'clock in the afternoon for the purpose of purchasing shoes for Walter. Upon failure to find shoes at the first store in which they stopped, they then proceeded to Mr. Hamburg's secondhand store on Preston Street. While Walter was trying on some socks and shoes, Anderson and Jack followed Mr. Hamburg into the rear of the store where they attacked Mr. Hamburg. Walter left immediately for the home of Jack. Within a few minutes the appellant and Jack arrived and the appellant took from his pocket some money, a watch with chain and charm attached, a bunch of keys, and a small locket, and threw them on the bed. The money was divided. Walter received $11, Christine the wife of Jack, received $30, and the remainder was divided between Jack and the appellant. Soon thereafter, Jack and the appellant and Rose Lee Mack went to the store of Roy Quinn where the watch and chain were disposed of for $6.

The appellant admitted going with Jack and Walter for the purchase of shoes, but denied the story estab-

lished by the Commonwealth as to what happened in the store and thereafter. He claimed that when trouble arose he immediately left, leaving Jack and Walter in the store. He stated that he prepared for, and was in attendance as best man at a wedding, and undertook to show his whereabouts from about 4 until about 12:30. He was corroborated in this testimony by two witnesses who were present at the wedding.

Upon the above evidence the jury found the appellant guilty and fixed his punishment at death.

Attorneys for the defendant below, by Western Union, informed this Court that they were unable to continue the defense due to the fact that relatives and friends of the appellant were unable to raise funds for incidental expenses. Whereupon, Mr. Marion Rider of the Frankfort Bar was appointed to defend in this Court. Without any hope of remuneration, yet in desperate earnestness, Mr. Rider has prepared an exhaustive and pervasive brief. For this unstinted service he has truly merited and well deserves a word of commendation. Believing it necessary in order properly to care for the interest of the appellant, he makes a complete departure and raises errors entirely different from those raised in the court below, either on motion for a new trial or in the bill of exceptions. He calls attention to the fact that the record contains but few objections by counsel for appellant at the trial, none of which are directed to matters of any particular importance, and not a single exception to the rulings of the trial court.

The errors he alleged are as follows:

"1. The evidence does not satisfactorily establish the guilt of the appellant, and its sufficiency to sustain the verdict is not free from doubt.

"2. There is no evidence which tends to connect the appellant with the offense proven except the testimony of the accomplice, and the lower court should have directed the jury to return a verdict of not guilty.

"3. The lower court abused its discretion in permitting the jury to separate, and especially so since it is shown that the trial judge requested that counsel agree that the jury might separate.

"4. The lower court erred in permitting the Com-

monwealth's Attorney to make improper and highly prejudicial statements to the jury in his closing argument.

"5. The lower court erred in making an improper and highly prejudicial-remark in the presence of the jury with respect to the effect of the testimony of the witness, Roy Quinn.

"6. The lower court erred in permitting the Commonwealth to require the witness, Christine Wright, while testifying as a witness for the Commonwealth, to admit that she had made certain statements on another occasion which were inconsistent with her then testimony, and further erred in permitting the proof of the fact that such witness had made such inconsistent statements as substantive evidence of the guilt of the appellant.

"7. The lower court erred in submitting to the jury the question as to whether or not the witness, Walter Wright, was an accomplice."

It is insisted in brief for appellee that there is a radical dissemblance between the above alleged errors and those raised in the court below. A long list of cases is cited in support of the rule that unless motion for new trial sets out the alleged errors or unless the bill of exceptions sets out the trial errors relied on, this Court cannot consider them.

On the other hand, it is insisted in brief for appellant that because of the gravity of the penalty involved, this Court will rise above the rule enunciated in appellee's brief and take notice of these errors. This is not a case where the appellant seeks to take advantage of a silence that he has prevented from being broken, or irregularities that he has caused to be committed. Any departure from the well established procedural rule invoked by the appellee must be derived from the nature of the case and based on reason, right, and justice rather than on authority. It is the general conception that when a convention has been made or established its continuance is presupposed. It must be admitted that the established should not be touched except when it becomes incompatible with justice or right, in which event a departure becomes a matter of right rather than a maxim of procedure. We are not concerned here alone with

the interest of an apparently friendless colored man, but rather with the interest of the whole State, for if he is put to death that responsibility rests on the whole State. It follows, then, that in an effort to safeguard his interest, we safeguard the interest of the State.

When dealing with those vital and indispensable things called justice and right, shall we say that a rule of procedure is so inflexible as to preclude any adaptation. The power of established rules of procedure should never be arrested except in rare cases, yet should never be so strong as to render it entirely impossible to suspend their operation. This duty of arresting a rule of procedure, in a rare case such as this, in order that justice may be done, is not obligatory as a duty alone to ourselves, or to the appellant, but such, under the circumstances, as render it a duty to the State as a whole. The proper rule that should govern in matters of this sort was pointedly stated in Edwards v. Commonwealth, 298 Ky. 366, 182 S. W. 2d 948, 952, wherein the court said:

"* * * where the defendant's life is at stake, technical rules of procedure must give way to the more lofty aim that justice may be done. As said by the Supreme Court, in Brown v. (State of) Mississippi, 297 U. S. 278, 56 S. Ct. 461, 465, 80 L. Ed. 682:

" 'The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure, and wherever the court is clearly satisfied that such violations exist, it will refuse to sanction such violations and will apply the corrective.'

"It is far more important to society and constitutional government that the accused be accorded a fair and impartial trial than that he be required to forfeit his life in expiation of his crime, no matter how guilty the facts fairly adduced might have proven him to have been. * * *"

In keeping with the Edwards case above, we are of the firm conviction that this rule of procedure must give way to "the more lofty aim that justice may be done." Yet, it must be borne in mind that this suspension of the rule does not mean its abolition.

We shall now proceed to consider the errors as set out by appellant in his brief. A careful perusal of this

record convinces us there is little to the alleged errors under 1, 2, and 7, but in the remainder we find matters of more serious import.

In 3 above it is alleged that the lower court abused its discretion in permitting the jury to separate. Subsection 2 of Section 244 of the Criminal Code, as added by Acts 1940, c. 61,. provides as follows: "On the trial of crimes which are or may be punished capitally or by life imprisonment the jurors, before the case is submitted to them, may be permitted to separate by agreement of the attorney for the Commonwealth and the attorney for the defendant, with the approval of the trial judge, which shall be in open court and entered of record; provided the consent or approval may be withdrawn before any recess or adjournment of court."

The language of the above section is that in such cases the jury may be permitted to separate by the agreement of counsel with the approval of the trial judge. However, even though counsel agreed, they yet may not be permitted to separate since the court may not give its consent. It is a matter which finally addresses itself to the discretion of the trial judge. The record shows that the counsel agreed to the separation, but the difficulty arises when we find the statement that the court had requested such agreement. At the conclusion of the appellant's testimony, which was apparently at the approach of the noon hour, the court, addressing himself to the attorneys for the Commonwealth and defendant, said: "Is there any objection to the jury, and do you agree, that the jury may separate as you did yesterday?" The counsel on both sides agreed. In the first separation we have a situation where the court suggested that the attorneys agree, and in the last instance, we have the court asking them in the presence of the jury, if they did agree. We think it improper for the court, in the presence of the jury, to put counsel in the position of having to agree or object to the separation of the jury. The section above quoted puts counsel in no such position. More especially is that true when he is required to do so to the knowledge of the jury who might interpret it as antagonism to the jury. As suggested in the brief for the appellant, under the circumstances, all counsel could do was to take the course and follow the suggestion of the court, "smile and under-

take to make it appear that it was a pleasure to concur in the suggestion of the trial judge.'' This we hold to be reversible error.

Complaint is made under number 5 above of the remark of the trial judge with respect to the effect of the testimony of the witness, Roy Quinn. Quinn, it will be recalled, was the man to whom Jack Wright sold the watch, and he was undertaking to identify the appellant. He was asked if he saw the man in the courtroom, to which he replied, ''Yes sir, I believe I do'', and then pointed him out as a man dressed in a grey suit. Counsel undertook to ask Mr. Quinn, ''How would you describe this man as the man'', and the court interrupted and said, ''He says he is the man now.'' It is obvious from the way Quinn answered in that he said he believed he saw him in the courtroom that there was a suggestive uncertainty. It will be noted that in the testimony thereafter Quinn became very positive, but the effect of the remark had already been scored. We think this within itself possibly would not be sufficient to reverse but at least it might be said in a trial of this sort it cannot be considered altogether proper.

It is alleged under 6 above that the court erred in permitting the proof of the fact that the witness, Christine Wright, had made inconsistent statements on a former trial and admitted those inconsistent statements as substantive evidence of the guilt of the appellant. There should have been some instruction to the jury as to the purpose for which such evidence might be considered, and should not have been permitted to go to the jury as substantive evidence of the guilt of the appellant. See Harvey v. Commonwealth, 287 Ky. 92, 152 S. W. 2d 282.

We come next to the error alleged in 4 above about the improper and prejudicial statements of the Commonwealth Attorney in his closing argument. There is included in this record the entire argument of the Commonwealth's Attorney. Appellant complains of this remark: ''He testified against his brother just as he did today, but Mr. Moran would have you believe that he lies today. If Walter Wright would lie for anybody in this case he would have lied to save his brother.''

There is nothing in this record to show that Walter Wright ''testified against his brother just as he did today.'' He may have but this record does not show it.

Such statement was improper and obviously, under the circumstances herein, very prejudicial.

The Commonwealth's Attorney further said: "* * * They went to Roy Quinn, and were trying to pass the watch off somewhere else, and there was some dickering over the price. Roy said, I will give you six dollars for the watch. Wright refuses it, and they go outside, and they get outside, and Anderson says 'Go on in and get rid of it' * * *''

That statement, "Go on in and get rid of it" as far as this record discloses was not said by Anderson or by anyone. It too, was improper.

In closing he made the further statement: "* * * If when you get back in that jury room, there are several men in your group who don't have the courage to give the punishment they would demand that another jury give had Hamburg been a relative of theirs, then hang the jury until I can get another one or so I can get another one who do have the courage to enforce the law. * * *''

In that statement he would have the jury in fixing the punishment treat the matter upon the basis of Mr. Hamburg being a kinsman or relative of theirs. It had the effect of intimidating the jury inasmuch as that if some of them lacked courage to return the death penalty, he insisted that others of them hang it until he could get another jury that had courage to enforce the law. This, too, we believe was improper.

For the reasons stated above, the judgment of the lower court is reversed.