James Franklin BOWMAN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 16, 1956.

Rehearing Denied June 22, 1956.

James A. Crumlin, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

James Franklin Bowman was convicted of the murder of Roberta Busby. He received a death sentence, from which judgment he has appealed. It is insisted that: (1) a confession was improperly admitted in evidence; (2) the evidence was insufficient to sustain the verdict; (3) the argument of the prosecuting attorney was improper; and (4) the jury was allowed to separate improperly.

The body of Roberta Busby, 72 years of age, was discovered lying on the floor of her apartment about 2:30 a. m., on Sunday, August 29, 1954. She had bled profusely and her clothing had been pulled up so that her body was nude from the waist down. Her purse containing $37 and a large bottle containing about $10 in coins were undisturbed.

The accused had previously performed odd jobs about the apartment for the dead woman. He had been seen near by about 4:30 p. m. of the preceding evening by the dead woman's son. When arrested, less than six hours after discovery of the body, appellant admitted his presence at the apartment the previous evening but denied kill-

ing the woman. Two Louisville police officers talked with appellant about two hours, during which time he denied the killing and signed a statement to that effect. Upon inquiry being made as to what clothes he had worn on the previous day and their location, appellant gave the officers written permission to go to his home to look at the clothing he had worn.

Appellant lived with his sister, Mary Ray, and her common-law husband, Henry Jones, with whom he worked part time. Jones had also worked for Roberta Busby. The dampness of a pair of pants, shirt, and pair of undershorts found in a small kitchen closet was explained by appellant by saying that he had carried a bucket of water up the steps for his sister earlier in the morning and had spilled it. The testimony of A. J. Miller, one of the officers, described the events following thus:

"* * * About that time, James' sister and brother-in-law came in, and after asking him who they were, I told them who we were and what we were doing there. And Mr. Jones said, 'You mean that Mrs. Busby is dead?' I said, 'Yes, sir.' He said, 'Well, who did it?' I said, 'I don't know.' So James was sitting on the little couch there in the kitchen where he slept, and I told Jones in front of James Bowman, I said, 'James has lied to us, and we want to get this straightened out one way or another.' So James was rubbing his head and perspiration popped out all over him, and he said, 'I did it. I did it. I'm guilty.' He says, 'A man that was with me did it, but I was along with him.' We asked James then who this man was and he furnished us a name which I have forgotten, but it is in my notes. And Jones described the man to him and he said, 'No, it wasn't that man,' and Mr. Jones asked him someone else and he said no, and then finally James said, 'I done it myself. I'm guilty.' So Mr. Jones asked him, he said, 'You mean you killed Mrs. Busby?' 'Yes, but I didn't rape her.' So with that, I asked James if he would go back and show us just what happened, and he said he would."

The damp clothes were identified by Mary Ray and Henry Jones as being those worn by the appellant on the day before. The accused then accompanied the officers to the home of Roberta Busby. On the way, he told them he had gone to do some work for Mrs. Busby. He said that he had seen her son and had walked into an alley to urinate. He stayed there until the son had departed. Appellant then was admitted by Mrs. Busby to her apartment. They discussed the work to be done and engaged in sexual intercourse. Afterwards, an argument arose about the charge for the work to be done. When Mrs. Busby threatened to have him arrested for rape, "he became angry, picked up a pair of scissors * * * grabbed Mrs. Busby and stabbed her several times in the throat." Appellant pointed out the place where he had thrown the scissors after leaving the apartment. Upon return to the homicide office at police headquarters, appellant gave the written statement which was introduced at the trial. The officers stated that the confession was given freely and voluntarily.

When the statement was offered in evidence on the trial, an objection was sustained to the first paragraph and the remainder was admitted over objection.

In considering the admissibility of the confession, the uncontradicted testimony shows that the first acknowledgment of guilt was made by the accused in the presence of his sister, his friend Henry Jones, and the two officers. It was not made in response to any question but was a statement volunteered although, perhaps, prompted by a sense of guilt. This was followed by a second admission of guilt in response to a question from his friend. These statements were made shortly after the accused had given permission to the officers to look for and examine his clothing worn when the crime was committed. Appellant then cooperated willingly with the officers by accompanying them to the scene

of the crime and in looking for the fatal scissors. On their way to the Busby apartment, he described the killing in detail. The confession concludes with the following statements:

"I have made this statement on my own free will, with out threats or promises and had same read to me by Detective A. J. Miller as I can not read. After it was read to me, I find that it is true to the best of my knowledge and have signed same."

■ There was no proof that the confession had been obtained by a plying of questions or extorted by threats, promises, or other wrongful means, as condemned by KRS 422.110. The appellant declined to testify or offer any evidence in his behalf. The statement made by appellant was made freely and voluntarily and was not obtained by any of the means prohibited. As such, it was admissible and the objection was properly overruled. Powell v. Commonwealth, 276 Ky. 234, 123 S.W.2d 279; Curtis v. Commonwealth, 312 Ky. 205, 226 S.W.2d 753.

■ It is further urged that it was error to permit the jury to take the confession with them to their room. We have searched the record and have not found anything to indicate that such was done or anything upon which to base such an objection. A mere assertion by counsel for appellant in his brief furnishes the only basis for this objection. We find no merit in this contention.

■ The sufficiency of the evidence to sustain the verdict was questioned in one respect only. Appellant contends that the evidence was insufficient to show the cause of death. Harry P. Elstone, Jefferson County deputy coroner, testified that he viewed the body shortly after it was discovered and that he was present during the autopsy. He described the wounds on the body and stated that the death was due to shock and hemorrhage occasioned by the severance of the trachea and carotid artery.

No question was asked by appellant's counsel concerning the qualifications of the witness. He did not object to any question or answer given by the witness. At the conclusion of the testimony given by this witness in response to a question by the trial court, appellant's counsel agreed with the prosecuting attorney that there was no disagreement as to the cause of death. The deputy coroner's testimony adequately established the cause of death, which also was amply sustained by other proof.

The next two grounds urged as error normally would not be available to the appellant since timely objection was not made and proper exception was not preserved. The questions of improper argument and separation of the jury must be considered under the prevailing rule for cases involving death sentences.

■■ The duty of maintaining the constitutional rights of a person on trial for his life and the importance to society and constitutional government that such person be accorded a fair and impartial trial require that the court take notice of any prejudicial error in the record, whether objected to or not, and direct a reversal of the judgment in order that such a trial may be had. When the accused's life is at stake, technical rules of procedure must give way in order that justice may prevail. McClure v. Commonwealth, 81 Ky. 448, 5 Ky.Law Rep. 468; Graves v. Commonwealth, 256 Ky. 777, 77 S.W.2d 45; Drake v. Commonwealth, 263 Ky. 107, 91 S.W.2d 1009; Edwards v. Commonwealth, 298 Ky. 366, 182 S.W.2d 948; Anderson v. Commonwealth, 302 Ky. 275, 194 S.W.2d 530. This is an exception to the general rule that this Court will consider only errors of the trial court to which proper exception has been taken and preserved. Warren v. Commonwealth, Ky., 256 S.W.2d 368; Ramsey v. Commonwealth, Ky., 267 S.W.2d 730; Patton v. Commonwealth, Ky., 273 S.W.2d 841. It was said in the Anderson case that such deviation from the general rule did not mean its abolition and was limited only to cases where the penalty was death and

there could be no doubt that the errors to which no exceptions were taken were such as to be highly prejudicial to the accused's substantial rights. See Ellison v. Commonwealth, 311 Ky. 757, 225 S.W.2d 470.

Appellant complains that the prosecuting attorney's argument to the jury was prejudicial and beyond the scope of the evidence. The objectionable parts of the argument are quoted:

"She will never be able to tell you or her friends or anyone else the truth as to what happened in that room on that terrible, terrible Saturday afternoon. * * * You have a right to take his statement to the jury room with you and you are invited to do so. * * * why was it necessary to lurk, hidden in the alley, until Frank Busby left? Why? * * * This man tells you among other things, 'We had intercourse. We went back to the kitchen and had a beer. Went back to the room. She called me a black s. o. b., and said she was going to charge me with rape, so I picked up the scissors and hit her in the throat. She fell. I started to have intercourse again, and I left.' * * * What about all of the other old ladies and mothers and widows who are living by themselves or who are at home by themselves, where handymen come about the house, where servants come about the house? Are we to expose them to the same fate, terrible as it was, to Mrs. Busby? Are we to let them suffer the same thing by saying that we don't have the guts to sentence this man to the death penalty? Am I to tell my wife that by saying that I can't prosecute a case to that extreme?"

No objection was made to any part of the prosecuting attorney's argument at the time, nor was any objection made until after the trial court had directed the jury to retire to the jury room for a consideration of their verdict and the jury had so retired. The objection was overruled. The parts of the argument objected to were not set forth in the motion for a new trial or in accompanying affidavits. Ground III of the motion is:

"The Commonwealth Attorney's argument to jury was prejudicial and beyond the scope of the evidence."

The alleged improper argument was not contained in the bill of exceptions. For the first time, appellant's counsel designated in his brief the portions of the argument considered as improper. Thus, it is seen that the objection was neither properly taken nor preserved. The argument of the prosecuting attorney was transcribed in its entirety in the reporter's transcript filed in the record. Ordinarily, the improper argument of a prosecuting attorney should be shown in a motion for a new trial and contained in the bill of exceptions in order to be considered on the appeal. Criminal Code of Practice, Sections 280–282. McCollum v. Commonwealth, 204 Ky. 183, 263 S.W. 673; Rivers v. Commonwealth, 212 Ky. 329, 279 S.W. 328; Hudson v. Commonwealth, 227 Ky. 831, 14 S.W.2d 146; Wadkins v. Commonwealth, 239 Ky. 362, 39 S.W.2d 466; Alsept v. Commonwealth, 240 Ky. 395, 42 S.W.2d 517; Lewis v. Commonwealth, 308 Ky. 115, 213 S.W.2d 614. However, in view of our rule in cases involving a death sentence, we will consider the objections as if properly taken and preserved.

The first portion quoted of the alleged improper argument was merely a statement of truth since Roberta Busby was dead and could not be present to testify, as shown by evidence. The reference to the right of the jury to take the confession to the jury room was based on their right to consider a statement properly admitted in evidence, which is not objectionable. The question as to why appellant was lurking in the alley was based on testimony and was calculated to create a proper inference in the minds of the jurors. The third reference to improper argument is based on statements made by appellant in his confession, which was properly admitted in evi-

dence. The final portion of the alleged improper argument is not considered prejudicial in view of the facts of this case.

The last error claimed to have been committed by the trial court is, likewise, not supported by the record except the following ground contained in the motion for a new trial:

"The jury was allowed to separate during the noon hour."

In view of the severity of the sentence, reliance is placed on the statements contained in appellant's brief for consideration of his contention. The following is quoted from his brief:

"During the noon hour of the last trial the Court inquired if the jury should be allowed to separate and go their separate ways for lunch. The Commonwealth immediately insisted that the jury be kept together. The Court so instructed the jury that they were to remain together and in the care and custody of the sheriff. Two deputy sheriffs were sworn to keep the jury together.

"When the noon hour was over, the Court summoned the prosecuting attorney and defense counsel and informed them that one juror had gone to lunch alone, separate and apart from the other jurors, unaccompanied by either of the two deputy sheriffs. Where he went or with whom he talked was unknown. Sometime before the hour and fifteen minute lunch period was over, the jury (sic) returned to the Court room and was milling around through the crowd until the other jurors returned. The Court called the juror in and in the presence of counsel for both sides inquired of his activities and why he separated from the other jurors. This juror explained that while he was looking for his hat the other jurors, accompanied by the deputy sheriffs left. When he found his hat he saw them about a block away, but did not feel like running to catch up with them so he went to a nearby

restaurant, had a bowl of soup and returned to the court room. He denied that he talked with anyone or that anyone had talked with him about the case. *Counsel for appellant expressed the belief that he felt that the juror was reliable and when the Court asked defense counsel if he would agree to proceed on with the trial, counsel for the appellant consented to proceed with the trial.*" (Emphasis ours.)

■ Accepting the statement in appellant's brief at face value, the separation of the juror from the jury was discovered as soon as the trial was resumed. No objection or motion to discharge the jury was made at that time. The explanation of the juror was heard in the presence of the trial court and counsel on both sides. Counsel for appellant not only consented to proceed with the trial following the separation, but expressed his confidence in the integrity of the juror. This indicated that the appellant and his counsel were willing to accept this juror and risk their verdict on him.

Separation of jurors on the trial of capital crimes is provided for in Criminal Code of Practice, Section 244(2):

"Separation by agreement. On the trial of crimes which are or may be punished capitally or by life imprisonment the jurors, before the case is submitted to them, may be permitted to separate by agreement of the attorney for the Commonwealth and the attorney for the defendant, with the approval of the trial judge, which shall be in open court and entered of record; provided the consent or approval may be withdrawn before any recess or adjournment of court."

■ The usual rule makes it incumbent upon the Commonwealth to show clearly that no opportunity has been afforded for exercise of improper influence on the juror who has separated from the remaining members of the panel. Adams v. Commonwealth, 310 Ky. 506, 221 S.W.2d 81; Wells v. Commonwealth, 313 Ky. 371, 231 S.W.2d

30; Hamilton v. Commonwealth, Ky., 285 S.W.2d 156. This rule does not apply where the separation is by agreement or has been waived by the defendant. Gay v. Commonwealth, 303 Ky. 572, 198 S.W.2d 308.

■ The right of a defendant to have the jury kept together during the trial is statutory, not constitutional. Arnold v. Commonwealth, 194 Ky. 421, 240 S.W. 87. Such right, being statutory, may be waived. Wade v. Commonwealth, 106 Ky. 321, 50 S.W. 271, 20 Ky.Law Rep. 1885; Keith v. Commonwealth, 195 Ky. 635, 243 S.W. 293. The failure to object when a separation of the jury has been discovered constitutes a waiver. Heck v. Commonwealth, 163 Ky. 518, 174 S.W. 19; Wilson v. Commonwealth, 243 Ky. 333, 48 S.W.2d 3; Belcher v. Commonwealth, 247 Ky. 831, 57 S.W.2d 988; Richardson v. Commonwealth, 284 Ky. 319, 144 S.W.2d 492; Lewis v. Commonwealth, 312 Ky. 191, 226 S.W.2d 934; Marcum v. Commonwealth, Ky., 256 S.W.2d 22. In each of the six cases just cited, the defendant was tried for murder. In the Richardson case, a judgment invoking the death sentence was affirmed. These decisions control this case and require that appellant's contention as to the separation of the jury be rejected.

■ In view of the death sentence involved in the instant case, and of our rule in such cases, the record has been studied carefully, and leniency has been extended appellant in considering the alleged errors. It is recalled that our rule in death sentence cases requires only that prejudicial errors shown in the record be considered. We have gone beyond the limits of the rule in this case and have examined alleged errors which were not contained in the record but appeared only in appellant's brief. This is not to be considered as an extension of, or deviation from, our rule, but is indicative only of the extent of our consideration of the case. We have thus concluded that appellant received a fair and impartial trial which was free from prejudicial error.

Judgment affirmed.