Mary Lou **FLANNERY** et al., Appellants,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 27, 1969.

Joe P. Tackett, Cassie Allen, Prestonsburg, for appellants.

John B. Breckinridge, Atty. Gen., Joseph H. Eckert, Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Judge.

Mary Lou Flannery was found guilty of murder and sentenced to life imprisonment. She appeals—we affirm.

Mary Lou and Merlin Flannery, Jr. (the victim) had been divorced. The custody of their two children originally had been adjudged to the mother, but after agreement the custody was awarded to Merlin. For the purpose of seeing the children Mary Lou went to Floyd County from her home in Ohio. After the visit Mary Lou purchased a gun and ammunition, then beer and wine. Later she was seen at the home of Violet Wintland where Merlin was assembling a baby bed and where he was killed by gunshot wounds. Shortly after the shooting police officers found Merlin's riddled body and Mary Lou in the Wintland residence. They discovered a 32–20 Colt revolver loaded with six "spent cartridges" on the bed where she was sitting and in appellant's jacket were 32–20 caliber shells.

Mary Lou complains that the court committed " * * * prejudicial error in requiring her to plead to the charge of murder without having been furnished with a copy of (the) indictment." She claims that RCr 8.02 required that she "be given a copy of the indictment * * * before (she was) called upon to plead." That part of RCr 8.02 was deleted by amendment effective January 1, 1967. Merlin was killed on January 25, 1968.

On motion for a new trial hearing, appellant charges, the trial judge displayed such impatience and animosity toward one of her counsel that his frame of mind was such as to create the impression on appellant that she was not receiving a fair trial. Cited is Bradley v. Commonwealth, 218 Ky. 675, 291 S.W. 1047 (1927) in which we

indicated the entitlement of every litigant to an " \* \* \* unbiased, patient, careful, conscientious judge." The harsh language complained of occurred long after Mary Lou was found guilty and her punishment fixed by the jury. It happened on only one occasion. We are unwilling to say that one remark then made, to the effect that the court did not believe a certain statement of counsel, displayed an inability to fairly consider the motion or to cause Mary Lou to believe that she had not received a fair trial according to law.

The police chief who investigated the incident was testifying about Mary Lou and Merlin. The interrogation, answers, objections and rulings were as follows:

"Q—57 Did you have personal knowledge about any trouble they had had before this?

"A— Yes, I had had reports of trouble.

"Q—58 Now on this particular day of January 25th, 1968, did you receive any information about trouble between the deceased boy and this defendant?

"BY THE WITNESS:
"Would you repeat that please, sir?

"MR. STUMBO:
"On January 25th, 1968, before you went up there to the house, sometime in the daylight hours on that date, did you receive any information about trouble between this defendant and that deceased boy?

"BY MR. TACKETT: (Of counsel for defendant)
"Objection

"A— Yes, sir, I did.

"BY THE COURT:
"Overruled.

"Q—59 Now, who did you receive that information from?

"BY MR. TACKETT: (Of counsel for defendant)
"Objection

"BY THE COURT:
"Overruled.

"A— From the deceased, Merlin Flannery, Jr.

"Q—60 What time of the day was that?

"A— It was approximately three o'clock in the afternoon.

"MR. STUMBO:
"No further questions.

"BY MR. TACKETT: (Of counsel for defendant)
"I move to exclude all evidence with reference to what information was gotten from Merlin Flannery.

"BY THE COURT:
"Overruled."

■ Counsel for appellant fails to tell us the basis for the objection and cites no authority except his charge that the evidence was incompetent. Even if it was (which we do not hold) we fail to see how appellant was prejudiced. Other witnesses had told the story of domestic problems and the divorce. The officer's statement that he learned of trouble between them from Merlin was cumulative.

■ The policeman was asked if he had made a diagram of the Wintland residence showing the location of the rooms, furniture and Merlin's body. He answered that he had made a "rough sketch." Objection to its introduction or exhibition to the jury was made but overruled. Appellant complains of this ruling on the basis that the officer " \* \* \* made no measurements of the size of the rooms, the size of the house, the height of the ceilings or the number of feet from the different objects he located on that diagram." The diagram was not introduced in evidence [1] but even if the jury saw it the cross-examination made crystal clear that it was only a rough

1. The record does not indicate if the jury saw this diagram.

sketch and was not intended to be a drawing to scale. There was no prejudice. See Wigmore on Evidence, Vol. III, Sec. 790, page 174.

State Trooper Potter testified that Chief of Police Reed turned over to him, in addition to a gun, six 32–20 caliber cartridges. He produced them and then he was asked and answered:

"And they fit this weapon?

"That is correct."

The cartridges, over objection, were filed in evidence but the weapon was not. He was asked about finger prints on the gun and said none were found. Appellant contends that reversible error was committed by displaying the gun. She relies on Hall v. Commonwealth, Ky., 276 S.W.2d 441 (1955) and Eastham v. Commonwealth, Ky., 390 S.W.2d 136 (1965). In those cases we said that instruments, not identified, should not have been introduced in evidence. Here the gun was not formally introduced, but more important it was carefully and fully identified. The chief said he found it on the bed where Mary Lou was when he arrived at the Wintland house, and he took it into his possession, and the trooper stated he received the gun from the chief.

On May 2, 1968 during the course of the trial the jurors left the courthouse for the night under guard. RCr 9.66. The three female jurors were accompanied by a lady guard and they went their way. The nine male jurors, in charge of one guard, went to two automobiles which were parked in the courthouse lot. The guard and some jurors entered the front auto and the remaining jurors, including Chester Hale and Arthur Hicks, got into the following car. Hale had left his truck containing certain property in a nearby parking lot. He had told the guard he was going to remove the truck and follow the two autos to the motel where all were to sleep. As the second auto neared the lot it stopped so that Hale and Hicks could get out. The two cars proceeded to a place on the street about 120 feet from the ten by ten-foot building on the parking lot which was used as a "pay booth" and office. The two autos parked at the curb. Hale and Hicks were out of sight of the guard from the time that they alighted from the second car until they appeared in the truck at the "pay booth." While there Hicks joked with the lot attendant, paid the parking charge, and then drove in behind the two autos containing the jurors. The separation consumed about five minutes. In parade-like fashion the three vehicles moved on to the motel.

On May 6, 1968 an amended motion and grounds for a new trial were filed with permission of the court. For the first time the court was informed, and complaint made, of the separation of jurors Hicks and Hale from the guard and the other jurors. Testimony was heard and the story we have related was told. The two jurors and the parking lot attendant swore that nothing occurred calculated to influence the verdict. The guard stated he saw nothing irregular.

Defense counsel and the commonwealth agree that our cases hold " * * * that a prejudicial error has been committed in case of jury separation where there has been sufficient opportunity afforded for the exercise of improper influence on one or more juror." Adams v. Commonwealth, 310 Ky. 506, 221 S.W.2d 81 (1949). Also see Bowman v. Commonwealth, Ky., 290 S.W.2d 814 (1956) and cases cited therein. The trial judge found that " * * * there has not been sufficient opportunity shown or improper conduct on the part of the jury." Cf. Roark v. Commonwealth, Ky., 321 S.W.2d 783 (1959). We do not find this ruling of the trial court to be erroneous.

More important is the fact that one of the defense attorneys observed the separation on the evening of May 2, 1968, but this was not called to the attention of the trial court until four days later which was after the trial was completed and the appellant was found guilty. The right to a guarded jury may be waived. Iles v. Com-

monwealth, Ky., 399 S.W.2d 296 (1966). The delay in bringing this complaint before the trial court was a waiver. Belcher v. Commonwealth, 247 Ky. 831, 57 S.W.2d 988 (1933) and Bowman v. Commonwealth, Ky., 290 S.W.2d 814 (1956), cert. den. 352 U.S. 882, 77 S.Ct. 105, 1 L.Ed.2d 82.

Finally counsel for appellant states that motion made for the allowance of a fee for conducting the defense was erroneously overruled. These lawyers were appointed by the court and directed to defend Mary Lou. Cf. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 799 (1963). The same complaint was made in Commonwealth, Dept. of Corrections v. Burke, Ky., 426 S.W.2d 449 (1968) and was rejected.[2] The ruling in Burke is dispositive of this argument.

The judgment is affirmed.

All concur.

2. The writer of this opinion disagreed in part with the opinion in Commonwealth, Dept. of Corrections v. Burke, and continues to adhere to the view he expressed in his separate opinion.